# Tulley, *et al. v.* Snow.

## *Ejectment.*

(Decided November 7, 1914.    68 South. 301.)

1. *Adverse Possession; Acts Constituting; Possession of Widow.*— Where a widow to whom dower was assigned in certain described lands, took and continued in possession of such lands, and other lands, her possession of the other land was not within the provisions of section 3406, Code 1907, and her exercise of authority and possession over the other land, if not adverse, could only be attributed to the sufferance of the heirs.

2. *Same; Color of Title; Instruments.*—A conveyance of land described cannot operate as color of title in the grantee of other lands taken possession of by him as part of the described land.

3. *Same; Burden of Proof.*—Where the widow in possession of land assigned to her as dower, was in possession of other lands of the estate within the enclosure of the land assigned, at the time of her re-marriage, the burden of proving that the occupancy by the second husband of the other land, under the mistaken belief that the assignment of dower included the other land, and that a deed to him of the reversion included the other land, was changed into a possession hostile to the heirs, rested upon him or his heirs claiming title by adverse possession.

4. *Same; Instructions; Ignoring Issues.*—Where there was evidence that the ancestor of defendants believed in good fatih that he had purchased the land in dispute, that he exercised actual possession thereof, claiming the land as his own until his death, and that the possession was continued thereafter by his widow and heirs for the

statutory period to invest title, a charge that the deed under which the ancestor claimed was not color of title to the land involved, and the verdict must be for plaintiff, if the jury believed the evidence, took from the jury the issue of title by adverse possession, and was consequently erroneous.

APPEAL from Birmingham City Court.

Heard before Hon. C. C. NESMITH.

Statutory ejectment by Mary Ann Snow against R. J. Tulley and others. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

Charge 5, given for plaintiff, is as follows: "I charge you that the deed offered in evidence from the register in chancery, conveying to Andrew Tulley the reversion of the lands assigned to Rebecca J. Tulley as doweress of A. H. Laird, does not constitute color of title to the lands sued for in this action, and if you believe the evidence, you must find for plaintiff for the lands sued for in the complaint, to wit, lots 5 and 6 as described in the several pleas of disclaimer."

NATHAN L. MILLER, and NEEHAM A. GRAHAM, for appellant.

ETHERIDGE & LAMAR, and A. & F. B. LATADY, for appellee.

McCLELLAN, J.—Statutory ejectment by Mary Ann Snow against R. J. Tulley, John Tulley, and Bettie Hicks. The complaint described 20 acres of land. R. J. Tulley disclaimed possession of any of the land. As the result of partial, separate disclaimers by the other two defendants, the contest proceeded with reference to lots 5 and 6 of the 20 acres sued for. In the year 1876, A. H. Laird died, seised and possessed of 400 acres of land. Surviving him were his widow and a number of children, the plaintiff, being one of them. The tract

here in suit was a part of the land owned by him at the time of his death. He left a will, but his widow dissented therefrom. One hundred and forty acres of the Porter tract owned by him was, on February 23, 1877, set apart to the widow by the probate court as her dower. The aggregate acreage owned by A. H. Laird consisted of two tracts, viz., the Porter place, containing 280 acres, of which the land in suit was a part, and a 120-acre tract. The Porter place was subject to a vendor's lien. The 120-acre tract was sold, under administration proceedings, to one Vines in order to afford funds with which to pay debts against the estate additional to the sum due as purchase money for the Porter tract. Under proceedings in the chancery court of Jefferson county a decree was passed directing the sale of the lands of the Porter tract for the satisfaction of the lien of the vendor's assignee in this order: First, the reversion in the dower lands; second, the rest of the Porter tract; and, third, if sufficient funds were not brought into prospect by the two preceding offers, then the dower rights were to be sold. Before the enforcement of this decree was effected, Laird's widow, to whom dower had been assigned as stated, married A. J. Tulley on April 12, 1878. Tulley bought the *reversion* at the sale under the decree, on February 2, 1880, paying sufficient therefor to entirely satisfy the decree. Neither in the decretal order assigning dower nor in the deed giving effect to Tulley's purchase at the sale under the chancery decree was the 20 acres described in the complaint conveyed. So the legal title to the 20 acres described in the complaint vested and abides in the heirs of A. H. Laird, one of whom the plaintiff is, unless *adverse* possession, by A. J. Tulley and those who claim through him (the defendants), for the requisite period operated to vest the title to the lands in

[Tulley, et al. v. Snow.]

suit in them, as Tulley's heirs. The court, at the request of the plaintiff, instructed the jury, through charge 5 (which the report of the appeal will contain), that if they believed the evidence, the finding should be for the plaintiff for lots 5 and 6 described in the pleading.

(1) Since the land in suit was *not* a part of the particular land regularly assigned to the widow of Laird for her dower, the plaintiff cannot have recourse to doctrines that protect the rights of reversioners or remaindermen against the inception or assertion of adverse possession by life tenants.—Code, § 3406, and cases noted on brief for appellee. Those doctrines can only have effect when the status for their application actually exists. In short, there must be the relation of tenancy *and* of reversion or remainder before the preservative effect of those doctrines can be applied or invoked. Here the widow of Laird took her dower in lands other than those in suit. If she subsequently possessed lands not assigned, that possession could not have been predicated of her *right as a doweress.* Her exercise of authority and possession over the 20 acres, in which she had, after assignment, no right of dower, could only be attributed, if not adverse, to the sufferance of the heirs, the repositories of the legal title. These considerations require the laying out of view of the doctrines adverted to.

(2) It is to be further observed that since the conveyance made to Tulley under the chancery decree did not describe the lands in suit, and since the conveyances made by Gwin to Tulley did not describe the lands in suit, these instruments, whatever their force and effect otherwise, could not operate as color of title, in any degree, for a possession taken or assumed by Tulley.—

*L. & N. R. R. Co. v. Boykin,* 76 Ala. 560, 566; *Reddick v. Long,* 124 Ala. 260, 266, 27 South. 402.

(3) The contention of defendants is that A. J. Tulley and those who claim through him had adverse possession, which long since ripened into title as against the plaintiff, in virtue of an actual possession taken and maintained under and in accordance with A. J. Tulley's purchase of the land in suit, with other lands of the tract, from M. M. Gwin, on or about July 25, 1878. At that time Mrs. Rebecca Laird was the wife of Tulley; they having been married April 12, 1878. At the time of the marriage to Tulley, Mrs. Laird was living at the Laird homestead, and the 20 acres in question was under common fence with the 140 acres set apart as her dower, and her Laird children were living on the land with her, and the same was being used, along with the other lands, as the means of support of the members of the household. It is too clear to admit of doubt on this record that up to the time of her marriage to Tulley, Rebecca J. Laird did not assert any claim or right in or to this 20 acres hostile to the Laird children, and so, regardless of whether her possession of the 20 acres is referred to an asserted mistaken idea that the 20 acres was a part of the land set apart to the widow of Laird in the dower proceedings. There is evidence in the record that Tulley, an wholly unlettered man, entertained, bona fide, the idea that when he made the purchase from Gwin in July, 1878, he was buying and did buy in his own right lands embracing the 20 acres here in question, subject to the charge of the vendor's lien, later enforced in the chancery court. The deed from Gwin to Tulley did not describe this 20 acres, as, indeed, Gwin received no muniment of title thereto when he purchased at the administration sale in the course of the winding up of A. H. Laird's estate. So

when the controversy is relieved of all unnecessary matters that have been made the subjects of disputation here, as well as in the court below, the real controlling inquiry was and is a question of fact, viz., whether Tulley, after and upon his purchase from Gwin, assumed in expression of his own right—even though that had no real basis in the conveyance by Gwin to him—such an actual possession of this 20 acres as could and did ripen into title in his heirs at law. Tulley lived about 8 years and 4 months after this asserted purchase from Gwin. Up to the time this asserted purchase was made, Tulley's occupancy of the premises, including the 20 acres, then occupied by Rebecca J. Laird-Tulley and the Laird children, one of whom plaintiff was, was not under this record referable to any character or quality of claim hostile to the rights of Laird's widow or of Laird's children. When he purchased from Gwin that condition with reference to the possession prevailed. Did Tulley alter it under and in his own asserted (though mistaken) right of purchase from Gwin? If Tulley's occupancy was not in assertion of his own right—was an occupancy in continuance of and consistent with the relation established by his marriage to Mrs. Laird and his entry into an already existing occupancy in virtue of rights resulting from Laird's demise—then of course Tulley's possession was not hostile, but in subordination, to the rights and title descending and accruing from Laird. The burden was upon those who assert that Tulley's occupancy in harmony with the rights and title resulting from Laird was so changed as to be a possession that, if maintained for the requisite period could and did ripen into title by adverse possession. After a careful review of the entire evidence, our opinion is that this issue should have been left for the jury's determination, under ap-

propriate instructions defining the essential elements of adverse possession.

(4) In view of the retrial likely to occur we refrain from a discussion of the evidence. It will suffice at this time, and also best subserve the further satisfactory consideration and decision of the issue of fact indicated if we do no more than say that there was evidence, and reasonable inference from the facts and acts testified to by the witnesses, tending to show the entertainment, bona fide, by Tulley that he had in fact purchased of Gwin the land in question; that thereafter he exercised an actual possession thereof; that he claimed the land as his own in virtue of the purchase from Gwin, so thought to include the 20 acres; that that possession was continuous from then until he died; and that thereafter his widow and heirs continued the possession so begun by him for the period requisite to invest title.

The special instruction given at plaintiff's request took the solution of the stated issue from the jury, and this was error.

The judgment must be reversed. The cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and DE GRAFFENRIED, JJ., concur.