# Reynolds, *et al. v.* Love, *et al.*

### *Bill for Partition and an Accounting.*

(Decided January 21, 1915. Rehearing denied February 11, 1915. 68 South. 27.)

1. *Wills; Construction; Statute.*—A will whereby the testator devised real estate in trust for the benefit of a daughter who was to receive the rents for life, and on her death a granddaughter was to receive the rents for life, and after the death of the granddaughter in trust for her issue, and their issue, executed while the rule in Shelley's case was in force, the testator dying after the rule in

Shelley's case was abolished by section 3403, Code 1907, must be construed under the statutory law, and the remainder over was preserved by the statute, which became operative before the death of the testator, and the persons who, on the termination of the life estate, are the issue, are entitled to take as purchasers by virtue of the remainder so limited to them.

2. *Same; Time for Taking; Effect.*—A will is ambulatory and subject to revocation by the testator during his life.

3. *Same; Validity; Indefiniteness; Perpetuities.*—A provision in a will creating a trust, the income therefrom going to a daughter for life, and on her death to a granddaughter for life, and on the death of the granddaughter to her issue and their issue, which requires the children, or some of their issue, to reside on the land forever, is not only void because indefinite and uncertain, but also violates the rule against perpetuities.

4. *Same; Estate Devised; Issue.*—Where a testator devised real estate in trust for the benefit of a daughter as to the incomes and profits, and on her death, under the same conditions to a granddaughter, and on the death of the granddaughter, in trust for her issue and their issue, the limitation is to the issue of the granddaughter, on her death; the word, issue, taking in all of the children of the granddaughter then living, and the descendants of any who are dead, the latter taking per stirpes, and the devise to the children of the granddaughter after her death vested as the children were born, subject to opening and letting in of all the children born.

5. *Same.*—In a devise to one for life with remainder to her issue, the word, issue, means descendants living at the death of the life tenant, under section 3399, Code 1907.

6. *Same; Testamentary Trusts; Title of Beneficiary.*—Where testamentary trustees were not charged with any duty, but were mere naked trustees, such trustees were merely depositories of the legal title, which vested in and passed to the beneficiaries under the statute.

7. *Remainders; Limitation; Falling in of Life Estate.*—Limitations do not begin to run against remaindermen until the death of the life tenant.

8. *Partition; Bills; Sufficiency; Parties.*—A bill for partition alleging that a respondent is in possession of and claims some of the land, but is not the owner in whole or in part thereof, or of any interest therein, and not averring that he has any interest in land, claimed by co-respondent, shows that such respondent is not a proper party.

9. *Quieting Title; Right of Action; Possession of Defendant.*—A bill to quiet title which alleges that the land is in possession of a respondent, is not good but is subject to demurrer.

APPEAL from Autauga Chancery Court.

Heard before Hon. W. W. WHITESIDE.

Bill by A. C. Love and others against W. W. Reynolds and others to sell lands for division and account

for the rents and profits arising from the use and occupation of said land. From a decree for complainants, respondents appeal. Affirmed in part, and reversed and remanded in part.

The following are the items of the will of Mary Lanier referred to in the opinion:

Item 2: I give and devise unto friends Clement G. Lanier, George Body, Albert J. Pickett, and John B. Rump, the survivor or survivors of them, their heirs and assigns, 160 acres of land lying east of the 80 purchased by Clarissa Dixon of Lindsay H. Davis, and adjoining land owned by Richard Morton. In trust, however, to permit and suffer my daughter Clarissa (wife of S. H. N. Dixon) notwithstanding coverture to receive all the rents, issues and profits thereof for her own use for and during her natural life, and after her decease, in trust for the use and benefit of my granddaughter Caroline La Fayette (wife of Addison C. Love) notwithstanding coverture, to receive all the rents, income, profits, etc., for her own use, for and during her natural life, and from and after the death of said Caroline La Fayette in trust for her issue, etc., and their issue, etc., and should the said Caroline La Fayette depart this life before the said Clarissa, I desire that the said Caroline La Fayette may have the power of appointing such of her children as she may think proper as beneficiaries of the said trust estate.

Item 3 names the same trustees for a different 80 of land in trust for Caroline LaFayette (wife of Addison C. Love), notwithstand coverture, to receive all the rents, issues, and profits, etc., for and during her natural life from said land, and from and after her death in trust as before for the use and benefit of her issue, etc., their issue, etc., provided always that the said children or some of them shall reside on the said premises,

and in case the said Caroline La Fayette, or some of her issue or their issue, will not continue to reside on said premises or some part thereof, it is my will that the said trust estate may revert back to some or any of my heirs who may be willing to reside permanently thereon, my object being to secure said lands as a homestead for the benefit of my said children, their issue, etc.

Item 4 is like item 2, except the beneficiary named is Mary Ann Elizabeth, wife of William G. Love, granddaughter of testatrix.

GIBSON & BOOTH, and P. E. ALEXANDER, for appellant.

W. A. GUNTER, for appellees.

ANDERSON, C. J.—The main question for our consideration is whether or not Caroline La Fayette Love took an absolute estate to the land left her under clauses 2 and 3 of the will (which will be set out by the reporter), or only a life estate, with remainder over to the class to which the complainants belong.

(1) In order to determine this question, we must first ascertain whether the will is to be construed under the law existing when it was made (1849) or· under the law as it was when the testatrix died (1861).

It is practically conceded by appellees' counsel, and properly so, that the remainder is not good under the rule in *"Shelley's Case,"* which was abolished by section 1304 of the Code of 1852 (section 3403 of the Code of 1907). On the other hand, if the Code of 1852 should be made applicable to wills made previous thereto, in the event, of course, that the testatrix did not die until after the adoption of same, these complainants took a vested remainder in the land.—*Kumpe v. Coons,* 63

Ala. 448; *Smaw v. Young,* 109 Ala. 528, 20 South. 370; *Thorington v. Hall,* 111 Ala. 323, 21 South. 335, 56 Am. St. Rep. 54. The general rule seems to be, as between laws in force at different times in the same jurisdiction, that the law existing at the time the will was executed may be referred to in determining the testator's intention; but the operative effect of the will and the rights of the parties thereunder are to be determined by law in force when the rights of the parties accrued, and this ordinarily is the law existing at the time of the testator's death, as against a law passed thereafter, or as against a law existing when the will was made, unless a contrary intent appears in the will. A law which is prospective merely does not extend to a will executed before the law goes into operation, although the testator does not die until afterwards.—40 Cyc. 1385. While the foregoing seems to be the general rule, the authorities are not entirely harmonious on the subject; some applying the law existing when the testator died; others the law as it was when the will was made. See note to the case of *Barker v. Hinton,* 62 W. Va. 639, 59 S. E. 614, 13 Ann. Cas. 1150. The conflict in the decisions arises largely, not as to what the general rule is, but in the construction of subsequent statutes, and in determining whether or not they were so worded as to be deemed prospective or retrospective. Our own court has heretofore quoted the general rule as laid down by Mr. Cooley in his work on Constitutional Limitations, as follows: "A statute should have a prospective operation, unless its terms show clearly a legislative intention that it should operate retrospectively."—*Ex parte Buckley,* 53 Ala. 54.

But, while quoting the foregoing rule, this court used the following language: "But this strictness of construction is not to be applied to all retroactive statutes. In

commenting on this language, taken from Cooley, this court used this language: 'The statutes excluded from judicial favor, and subjected to this strictness of judicial construction—statutes which may properly be denominated retrospective—are such as impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability, in respect to transactions ·or considerations already past. Such statutes are offensive to the principles of sound and just legislation, and it is of these the authorities to which we have been referred use the term "odious," and other epithets expressive of judicial opprobrium. There are other statutes which, when operating retrospectively, have not incurred judicial condemnation, and to which a liberal construction, for the consummation of the just and beneficial purposes in view, has been fully accorded. Such statutes are intended to remedy a mischief, promote public justice, correct innocent mistakes into which parties may have fallen, cure irregularities, or give effect to the acts and contracts of individuals fairly done and made. These are remedial statutes, conducive alike to individuals and public good.'—*Ex parte Buckley,* 53 Ala. 54, 55. The question is, at last: 'Do they establish substantial justice and subvert injustice?'—Endlich on Int. of St., §§ 273, 277, 278.

"In *Hoffman v. Hoffman,* 26 Ala. 545, it was said: 'Whenever a statute is leveled against an abuse, or in furtherance of an acknowledged principle of right and justice, every reason exists for its most reansonable application.; and, in such cases, it may fairly be presumed that it was the intention of the Legislature that the boon of the statute should be extended .to every case which its words could properly.include.' "—*Birming-*

*ham Trust & Savings Co. v. East Lake Land Co.,* 101 Ala. 304, 307, 308, 13 South. 72.

In the case of *Hoffman v. Hoffman, supra,* this court while considering a change in the statute as to the requisite number of attesting witneses to a will, gave the new statute a retrospective effect as to a will made before the change, said new statute being the law when the testator died, in so far as it related to a devise of real estate; the court proceeding upon the theory that the object of the Legislature was to preserve and give effect to the intention of the testator, by abolishing a technical rule which too frequently defeated it. It was there held that, where the words do not force them, the courts will not construe a statute so as to defeat a will or bequest which would have been valid under the law as it existed when the will was made, unless the new law is plainly retrospective; but, unless the statute clearly indicates that it is prospective, being beneficial in its nature, it will be given a retrospective effect when doing so will sustain, rather than invalidate—will save, rather than destroy. In other words, the court gave the new statute a retrospective effect as to devises of real estate, and a prospective operation as to devises of personal property, as the said new statute increased the number of witnesses as to a devise of personalty, an'd decreased the number as to a devise of real estate. The only basis for the distinction seems to have rested upon a desire of the court to give effect to the wishes and intentions of the testator, and to preserve the will if it conformed to the law either at the time the will was made or at the time of the death of the testator. While the *Hoffman Case, supra,* does not deal with section 3403 of the Code of 1907 (section 1304 of the Code of 1852), it is applicable by analogy to the statute in question, which was enacted to abolish the rule in *Shelley's*

[Reynolds, et al. v. Love, et al.]

*Case,* and thereby enlarge the power of the owner to entail his property, and, being beneficial in its nature, will be given a retrospective effect when essential to preserve or uphold the will or a bequest thereunder.

We therefore hold that the will in question is not controlled by the rule in *Shelley's Case,* and that the remainder over was preserved by section 1304 of the Code of 1852, which became operative before the death of the testatrix.

It is true that this court held in the case of *Wilson v. Alston,* 122 Ala. 630, 25 South. 225, that the statute abolishing the rule in *Shelley's Case,* was not retroactive as to conveyances made before its enactment, but it has never been held by this court, that it was not retroactive as to wills, when such an operation was necessary in order to uphold the will or a bequest thereunder.

(2) Moreover, there is a foundation for a very marked distinction in applying the rule to wills, instead of deeds. A deed is irrevocable after its execution, and the grantee acquires a vested right; and to give the statute a retroactive effect would impair a vested right. A will, however, is ambulatory, and is subject to revocation at the instance of the testator at any time during his life. Nor is the case of *McQueen v. Logan,* 80 Ala. 304, in conflict with this holding, as the statement in the opinion that only deeds and wills made before the Code of 1852 were controlled by the rule in *Shelley's Case* does not exclude the right to apply the statute abolishing said rule to wills made before the Code of 1852 became operative, if it was operative when the testator died.

(3, 4) The condition subsequent, requiring the children, or some of their issue, to reside upon the land forever, is void, being indefinite and uncertain, and a violation of the rule against perpetuities.

15—191

(5) As to the devise of the second limitation to "their issue," etc: The limitation is to the issue (descendants) of Caroline, on her death. "Issue," at her death, takes in all the children of Caroline then living, and, if any were dead leaving descendants, the latter would take per stirpes the shares of the deceased child.—*Smith v. Smith*, 157 Ala. 79, 47 South. 220, 25 L. R. A. (N. S.) 1045. The devise to the children of Caroline, after her death, was vested as the children were born, subject to open and let in all children born unto said Caroline, and, of course, any child dying after the estate vested, the estate would descend and vest in such child's descendants, if any, and, if none, in its heirs at law . So the second clause, stands as if it read, "to Clarissa for life, remainder to Caroline for life, and remainder to her children."

(6) As to the third clause—"devise to Caroline for life, remainder to her issue:" "Issue" means descendants living at the death of Caroline.—Code 1907, § 3399.

(7, 8) The complainants being remaindermen, the statute of limitations did not commence to run against them until the death of Caroline, the life tenant, in 1913. Nor are they barred upon the theory that the legal estate was in the trustees; and, if they are barred, the beneficiary would be also. The trustees in question were not expressly charged with any duties, and, the trust being a mere naked one, they were merely depositories of the legal title, which was by the statute vested in the beneficiaries.—*Huntington v. Spear*, 131 Ala. 414, 30 South. 787; *You v. Flinn*, 34 Ala. 409, 414.

The case of *Love v. Love*, 65 Ala. 554, is not in conflict with this holding. There the court declined to determine whether the parties acquired a legal or an equitable title, but held that the life tenant could not recover on account of the adverse holding of the respondent.

The life tenant could not prejudice the interest of the re-maindermen, nor, by her act or conduct, defeat their ti-tle.—Section 3406 of the Code of 1907. The court in the *Love Case, supra,* declined to decide the effect of the bar upon the remaindermen.

(9, 10) The bill is defective as to the respondent Pick-ett. It simply charges that the said Pickett is in pos-session of, and claims, some of the land, but is not the owner, in whole or in part, of the land or of any inter-est therein. In other words, if the claim of said Pick-ett is removed as a cloud on the complainant's title, he will then have no interest in the land, and will have nothing in common with the complainants or other own-ers of any of the land. The bill negatives the owner-ship of Pickett to the 80 acres in his possession, or to any interest therein, and does not aver that he had any interest in the land claimed by the other respondents; and he was, therefore, in no sense, a proper party re-spondent if the bill be treated as one for partition.— *Brown v. Feagin,* 174 Ala. 438, 57 South. 20. Nor is the bill good as to the said Pickett, as a bill to quiet title, as it avers that he is in the possession of the said 80 acres of land.

The chancery court properly construed the will, and properly granted the complainants relief, but erred in not sustaining the demurrer of Pickett to the bill, and in rendering a decree against him.

Affirmed in part and reversed and remanded, without cost of appeal to Pickett; the same to be equally divid-ed between appellant Reynolds and the appellees.

Affirmed in part and reversed and remanded in part.

MAYFIELD, SOMERVILLE, and GARDNER, JJ., concur.