'(108 So. 858)
## ST. CLAIR SPRINGS HOTEL CO. v. BALCOMB et al.   (7 Div. 619, 619A.)

(Supreme Court of Alabama.   April 8, 1926.
Rehearing Denied June 10, 1926.)

**1. Remainders ☞17(2).**

Reversioners or remaindermen may proceed in equity, pending life estate, to have their title or interest in lands declared as against claims of others.

**2. Quieting title ☞44(1).**

Complainants, on showing title to one-half interest in deceased ancestor, notwithstanding life estate in her husband, made out a prima facie case, shifting burden on respondents to show divestiture of complainant's estate.

**3. Adverse possession ☞62(3).**

The possession of a widow under her quarantine right is not adverse and confers no greater or superior title to her grantee.

**4. Adverse possession ☞62(3)—Grantee of widow in possession under quarantine right acquires no greater right as to reversioners against whom limitations do not run during life of life tenant.**

Grantee of widow having possession under quarantine right, and attempting to convey a fee, acquires no greater right as to reversioners who have no right of action for recovery of possession during life of life tenant, and during such time limitations do not run against them for recovery of possession.

**5. Life estates ☞8—Neither limitation nor prescription runs against remainderman until termination of life estate.**

In absence of special equity, until the remainderman has right to sue, on termination of life estate, neither limitation nor prescription runs against him, since there cannot be two hostile possessions of same property at the same time.

**6. Adverse possession ☞62(3).**

Where son in possession of land knew that his mother was occupying it under her right of quarantine, his entry and possession was permissive and not adverse.

**7. Adverse possession ☞85(4).**

Evidence held not to show adverse possession in party whose cross-complaint and deed recognized life estate and possessory rights of one grantor at time that another grantor, claiming adversely under whom cross-complainant claimed, executed deed.

**8. Executors and administrators ☞201—Widow in possession under quarantine right cannot cut off title of heirs (Code 1923, § 6910).**

Under Code 1923, § 6910, no act or deed of widow in possession under her quarantine right is effective to cut off title of heirs of husband, as it is of statutory origin.

**9. Estoppel ☞29(1).**

One entering into possession of land under a deed is estopped to deny his grantor's title.

**10. Champerty and maintenance ☞7(2)—Possession of land by widow under quarantine right held not such as to avoid deed made by remaindermen for champerty and maintenance.**

Possession of land by widow under her quarantine right is not such as to avoid a deed by remaindermen, having right to transfer title or interest, for champerty and maintenance.

**11. Champerty and maintenance ☞7(2)—Possession which will avoid a deed for champerty must be actual, visible, exclusive, and hostile.**

Adverse possession by one estopped to deny title of actual owner is not such a holding as will affect deed made by such owner, and hence possession which will avoid a deed for champerty must be actual, visible, exclusive, and hostile.

**12. Adverse possession ☞112.**

Where cross-complainant showed legal title to some interest in land involved, burden of avoiding it by showing superior title by adverse possession held on cross-defendants.

**13. Deeds ☞97.**

The granting clause in a deed as to interest conveyed will prevail over interlocutory recitals.

**14. Evidence ☞372(1).**

Original ancient deed, purporting to be genuine and complete and showing no suspicious erasures, etc., is competent.

**15. Acknowledgment ☞49.**

Under Code 1923, § 6840, a due acknowledgment of deed dispenses with necessity of witnesses, etc.

**16. Deeds ☞31.**

Use of pronoun "we" in a deed is sufficient as to each grantor whose name is appended to the deed.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, We.]

**17. Acknowledgment ☞59.**

Justice of the peace is presumed to be exercising powers of his office in taking acknowledgment to deed, and word "acting," preceding "justice of the peace," is mere surplusage not invalidating deed.

**18. Equity ☞57.**

Though deed be insufficient to convey title, payment of purchase price by grantee vests him with a perfect equity, which court of chancery will respect.

Appeal from Circuit Court, St. Clair County; O. A. Steele, Judge.

Bill in equity by W. W. Balcomb and others against the St. Clair Springs Hotel Company and others, with cross-bill by respondents. From the decree respondent St. Clair Springs Hotel Company and complainants appeal. Reversed and remanded on direct appeal; affirmed on cross-appeal.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The original bill is filed by W. W. Balcomb, Ione Collins, Roland Balcomb, and Cline Balcomb, complainants, against the St. Clair Springs Hotel Company, Olen D. McClendon, and Rose Phelps.

Respondent St. Clair Springs Hotel Company files answer and cross-bill, making as cross-respondents the complainants in the original bill and Rose Phelps, Olen D. McClendon, J. J. England, and George Wilcox.

The land in suit was patented and owned by Marion England, who died intestate in 1865, leaving his widow and four children surviving. The widow of Marion England remained upon the land until her death in 1920. Two of the surviving children died in the seventies, intestate and without issue. One of the children of Marion England, Mary England Phelps, died about 1880, intestate, leaving a husband, Rose Phelps, and two children, Isadore and Lonnie Phelps. Lonnie died intestate without issue. Isadore died leaving surviving her husband, W. W. Balcomb, and three children, Ione Collins, Roland Balcomb, and Cline Balcomb, who are the original complainants in this cause. Another of the surviving children of Marion England was John J. England. The asserted titles of cross-complainant St. Clair Springs Hotel Company, and of the respondents McClendon and Wilcox, are traced to John J England.

The theory of the original bill is that the cross-complainant hotel company has a half interest in the property; that respondent Rose Phelps (surviving husband of Mary England Phelps, daughter of Marion England) has a life estate in a half interest and also an eighth interest in reversion, which he inherited from Lonnie Phelps; that W. W. Balcomb has a life estate of three-eighths interest subject to the life estate by curtesy of Rose Phelps; and that the other complainants have each a one-eighth interest, subject to the life estates of Rose Phelps and W. W. Balcomb.

The theory of the cross-bill is that, in 1878, John J. England acquired by deed all the undivided interest of Mary England Phelps in the land; that said John J. England thereupon, in 1878, conveyed an undivided three-fourths interest in said land to E. C. Thomason, retaining in himself an undivided one-fourth interest; that thereafter said Thomason died intestate, being seized and possessed of three-fourths interest in the land, and leaving as sole heir Margaret E. Goodwin; that in 1899 said Margaret Goodwin executed a mortgage upon the land to Alice M. Harsh; that default was made in the terms of the mortgage and same was foreclosed, G. R. Harsh becoming the purchaser at the foreclosure sale and obtaining deed to the property; that thereafter said Harsh and his wife conveyed their title and interest in the lands to cross-complainant St. Clair Springs Hotel Company.

Respondents McClendon and Wilcox claim title to respective parts of the land through deeds executed in 1901 by Margaret E. Goodwin to Mollie E. England, who conveyed to McClendon, and to A. E. England, who conveyed to Wilcox. It is asserted for McClendon that said Mollie England held the land adversely until her conveyance to him in 1918, after which he so held, and that in 1917 the widow of Marion England (original patentee) granted to him all her interest in the land. For Wilcox it is claimed that A. E. England held under the deed to him from Margaret Goodwin until 1915, when he conveyed to Wilcox.

The contested issues were the efficacy of the deed from Mary England Phelps to John J. England in 1878, the efficacy of the deeds in the claim of title of the respondents McClendon and Wilcox, and the quality of the possession of the respondents.

By final decree the trial court held that original complainants had failed to sustain their bill by proper proof, and denied them relief; and also held that cross-complainant hotel company had failed to make out a case of recovery as against the respondents McClendon and Wilcox.

J. P. Mudd, of Birmingham, for appellant.

Two persons cannot hold the same property adversely to each other at the same time. Hinton v. Farmer, 148 Ala. 211, 42 So. 563, 121 Am. St. Rep. 63. Possession, to be adverse, must be exclusive. Gafford v. Strauss, 89 Ala. 286, 7 So. 248, 7 L. R. A. 568, 18 Am. St. Rep. 111; 2 C. J. 120, 131. No act or deed of the widow could be effective to cut off the heirs of Marion England. Code 1923, § 6910. Adverse possession, limitation, and prescription cannot run against the remainderman until he has the right to sue. 1 R. C. L. 758; Dallas Comp. Co. v. Smith, 190 Ala. 423, 67 So. 289; Reynolds v. Love, 191 Ala. 218, 68 So. 27; Phillips v. Phillips, 186 Ala. 545, 65 So. 49, Ann. Cas. 1916D, 994; Martin v. Long, 200 Ala. 210, 75 So. 968; Vidmer v. Lloyd, 184 Ala. 153, 63 So. 943; Winters v. Powell, 180 Ala. 425, 61 So. 96. Possession which will avoid a deed for champerty must be actual, visible, exclusive, and hostile. 11 C. J. 256, 260. Respondents had the burden of proving their title by adverse possession, cross-complainant having shown its record title. 11 Michie's Ala. Dig. 254. An acknowledgment dispenses with the necessity of witnesses. Code 1876, §§ 2146, 2158. Names of grantors do not have to appear in body of deed, when pronoun "we" is used. Sheldon v. Carter, 90 Ala. 380, 8 So. 63; Madden v. Floyd, 69 Ala. 221; Frederick v. Wilcox, 119 Ala. 355, 24 So. 582, 72 Am. St. Rep. 925.

Theodore J. Lamar, of Birmingham, for cross-appellants.

Complainants, as reversioners and remainderman, had the right to proceed to have

their title and interest declared, pending the life estate of Rose Phelps, as against the claims of respondents. Jenkins v. Woodward Ir. Co., 194 Ala. 371, 69 So. 646. Possession of the widow was not adverse to complainants. Robinson v. Allison, 124 Ala. 325, 27 So. 461. The alleged deed from Mary Phelps to J. J. England was improperly received in evidence. Long v. Pace, 42 Ala. 495; Jenkins v. Woodward Iron Co., supra; Orendorff v. Suit, 167 Ala. 563, 52 So. 744; Code 1876, §§ 2155, 2154; Stamphill v. Bullen, 121 Ala. 250, 25 So. 928; Postal Co. v. Brantley, 107 Ala. 683, 18 So. 321.

James A. Embry, of Ashville, for appellees.

In order to defeat the right of complainant in the cross-bill to recover the only possession required of respondents or their predecessors in title was that it should be adverse to the title acquired by the complainant and it was not necessary to hold exclusive adverse possession. Rivers v. Thompson, 43 Ala. 641; Bernstein v. Humes, 60 Ala. 602, 31 Am. Rep. 52; Yarborough v. Avant, 66 Ala. 526; Vandiveer v. Stickney, 75 Ala. 225; Probst v. Bush, 115 Ala. 495, 22 So. 445; Chevalier v. Carter, 124 Ala. 520, 26 So. 901; McIntosh v. Windham, 174 Ala. 145, 56 So. 1020.

THOMAS, J. It should be stated that the alleged holder of a life estate, Rose Phelps, is not assigning error or otherwise contesting the decree.

[1] Complainants as reversioners or remaindermen have a right to proceed in equity, pending the life estate of Rose Phelps, to have their title or interest in the lands declared as against the claims of the respective respondents, if they have such interest. Gunter v. Townsend, 202 Ala. 160, 79 So. 644; Jenkins v. Woodward Iron Co., 194 Ala. 371, 69 So. 646; Winters v. Powell, 180 Ala. 425, 61 So. 96; Lansden v. Bone, 90 Ala. 446, 8 So. 65; Prestwood v. Horn, 195 Ala. 450, 70 So. 134.

[2] Appellants, as original complainants, insist that when they showed title to a one-half interest in the lands in question in their deceased ancestor, Mary Phelps, notwithstanding the life estate in her husband, Rose Phelps, a prima facie case is made out for relief as to such interest or estate, and the burden of going forward with the evidence is shifted to respondents to show a divestiture of their estate. Such is the rule. Burkett v. Newell, 212 Ala. 183, 101 So. 836.

[3-5] The possession of a widow under her quarantine right is not adverse and confers no greater or superior title to her grantee. Robinson v. Allison, 124 Ala. 325, 27 So. 461. And her grantee under conveyance attempting to convey a fee acquires thereby no greater right as to the reversioners who had no right of action for the recovery of possession during the life of the life tenant, and during such time limitations do not run

against them for the recovery of possession. Winters v. Powell, 180 Ala. 425, 61 So. 96; Mitchell v. Baldwin, 154 Ala. 346, 45 So. 715; Kidd v. Borum, 181 Ala. 144, 61 So. 100, Ann. Cas. 1915C, 1226. In the absence of a special equity, the rule is that until a remainderman has the right to sue upon the termination of the life estate, neither limitation nor prescription runs against him. Kyser v. McGlinn, 207 Ala. 82, 92 So. 13; Vidmer v. Lloyd, 184 Ala. 153, 63 So. 943; Dallas Compress Co. v. Smith, 190 Ala. 423, 67 So. 289; Reynolds v. Love, 191 Ala. 218, 68 So. 27; Phillips v. Phillips, 186 Ala. 545, 65 So. 49, Ann. Cas. 1916D, 994. The reason for the rule is that there cannot be two hostile possessions of the same property at the same time; there may be many hostile claims and "one must operate to overcome the other, if the two be adverse." Pickett v. Doe ex dem. Pope, 74 Ala. 131; Tulley v. Snow, 190 Ala. 556, 68 So. 301.

[6] The testimony is without conflict that upon the death of Marion England, in about the year 1865, his widow remained in possession of the land under her quarantine right, and so remained until her death in 1920. When the evidence of A. E. (Dallis) England is considered as a whole, it shows that his possession was permissive and not antagonistic to that of the life tenant—the widow of Marion England. He states that his mother occupied the premises during her lifetime, occupying the house on the place; that until he was about 18 years of age he remained there with her; so as to the other children until they married, and that "she was there just under a quarantine"; that he did not move on the land as a squatter, but "with the permission of my [his] mother"; and the witness adds that "until I [he] bought this interest", he set up a notice of adverse claim and also by virtue of a deed from M. E. Goodwin. Notwithstanding this claim, he said that so far as he knew his "mother lived there uninterruptedly during her whole life"; that she "treated it as her home," and occupied the house and two gardens to the time and after she married Davis. The legal effect of this evidence is that witness' entry and possession was permissive. The testimony of J. J. England and J. A. Jones was, likewise, to the effect that the widow occupied the lands of her former husband, Marion England, under her right of quarantine. This disposes of the hostile claim of Wilcox, the successor in title of A. E. (Dallis) England to the N. W. ¼ of N. E. ¼ of section 3.

[7] The claim of complainant in cross-bill, O. D. McClendon, to E. ½ of N. E. ¼ of said section was by conveyance of Mollie E. England, the wife of A. E. (Dallis) England. The evidence fails to support the insistence that the said Mollie E. England was in adverse possession of said 80 acres of land; the widow's right and possession as to this

land was exclusive. Said grantee McClendon recognized the life estate or quarantine right of possession of the said widow in his deed from her attempting to convey the E. ½ of N. E. ¼ and N. W. ¼ of N. E. ¼ of said section. He claims in his pleading by deed from the widow, Elizabeth Davis (née England). He admits in his interrogatories this recognition of the life estate or possession by the widow under her quarantine right; and also in her conveyance to him, specifically stipulating:

"It is agreed and understood by the parties hereto that the said Elizabeth Davis is to hold possession and have the use of the house in which she now lives so long as she lives, and at her death the said Olen D. McClendon is to take possession of the same. Situated in St. Clair county, Alabama."

The deed from Elizabeth Davis, formerly Elizabeth England, in habendum clause, was to said Olen D. McClendon, his heirs and assigns forever, and contained clauses of warranty to said grantee, his heirs, executors, and assigns forever, against the lawful claims of all persons, conveyed no greater right than she held. The provision set out is confirmed by the other evidence and refutes McClendon's claim of title by adverse possession.

[8, 9] No act or deed of said Elizabeth could be effective to cut off the title of the heirs of Marion England, for it is of statutory origin, and to such effect are our decisions, that no estate or interest of any person can be defeated, extinguished, or discontinued by the act of any third person having a possessory or ulterior interest, "except in the cases especially provided for" by statute. Code 1907, § 3400; Code 1923, § 6910; Hargett v. Franklin Co., 212 Ala. 423, 103 So. 40; Prestwood v. Horn, 195 Ala. 450, 70 So. 134; Reynolds v. Love, 191 Ala. 218, 68 So. 27; Tulley v. Snow, 190 Ala. 556, 68 So. 301. McClendon, having entered into possession under the deed from Mollie E. England, is estopped to deny her title; and that title was subordinate in time and standing to that of the St. Clair Springs Hotel Company holding, as it did, through prior conveyances from Harsh, Woodall, and M. E. Goodwin, and Goodwin by virtue of the statute of descent and distribution from E. C. Thomason.

[10, 11] To avoid the effect of this priority in the line of conveyance, respondents in the original bill, Wilcox and McClendon, insist that the foreclosure and deed by and from Harsh was champertous on account of adverse holding to which we have adverted. We have indicated that these lands were subject to and held by said widow of Marion England under her quarantine right from 1865 to the time of her death in 1920. The right of remaindermen to transfer the title or interest so held must be admitted. Possession of land by or under persons having a contingent or limited estate is not such as to avoid a deed made by the owner for champerty and maintenance. That is to say, "adverse possession by one who is estopped to deny the title of the actual owner is not such a holding as will affect the deed made by such owner." It follows that the possession which will avoid a deed for champerty "must be actual, visible, exclusive and hostile." 11 C. J. pp. 256, 260, 261, § 46; Stringfellow v. T. C. I. & R. Co., 117 Ala. 250, 22 So. 997; Williams v. Hatch, 38 Ala. 338; Perry v. Eagle Coal Co., 170 Ky. 824, 186 S. W. 875.

[12] The St. Clair Hotel Company having shown its legal title to some interest in the land, the burden of avoiding it by showing their defense of superior title by adverse possession, as they have undertaken to do, is upon Wilcox and McClendon. Weaver v. Blackmon, 212 Ala. 681, 103 So. 889; Burkett v. Newell, 212 Ala. 183, 101 So. 836.

It follows from a careful consideration of the evidence that so far as concerned the interest of J. J. England the hotel company acquired that through foreclosure of the Goodwin-Harsh mortgage; and this vested interest to the remainder or reversion was not divested by the possession of the widow from 1865 to 1920 under her quarantine right.

[13-17] It follows that there was error in the decree as to the right, title, and interest of Wilcox and McClendon as against the St. Clair Springs Hotel Company. This conclusion of reversal of the decree necessitates a consideration of the extent of the respective interests of Mary Phelps, the predecessor in title of the original complainants, and J. J. England, the predecessor in title of the hotel company—respondent in original bill, and complainant in cross-bill. There were four children of Marion England: Puss England, Mollie England Phelps, Mary England Phelps, and John England. Puss (in 1875) and Mollie (in 1878) died intestate and left no children, husband, or wife surviving to the filing of the bill. Mary Phelps and husband, on September 5, 1878, conveyed all of their "undivided interest" described as "being one-fourth" in the described real estate, without naming the county, and acknowledged the instrument before one "C. J. Patterson, an acting justice of the peace," and it was signed by C. J. Patterson, justice of the peace. The granting clause as to the interest conveyed will prevail over interlocutory recitals. Porter v. Henderson, 203 Ala. 312, 82 So. 668. The deed from Mary Phelps and husband was an ancient document, offered as evidence in the original, purporting to be genuine and complete, and showing no suspicious erasures, etc.; and it was competent evidence. 1 Greenl. on Ev. § 21; McMillan v. Aiken, 205 Ala. 35, 88 So. 135; Id., 106 So. 150;[1] O'Neal

---

[1] 213 Ala. 494.

v. T. C. I. & R. Co., 140 Ala. 378, 37 So. 275, 1 Ann. Cas. 319; White v. Hutchings, 40 Ala. 253, 88 Am. Dec. 766. Its due acknowledgment dispensed with witnesses, etc. Section 2146, Code of 1876; section 3357, Code of 1907 of the date of its execution; and section 6840, Code of 1923, when the trial was had. The use of the pronoun "we" is sufficient as to each grantor whose name is appended to the deed. This is apparent from the whole instrument. Frederick v. Wilcox, 119 Ala. 355, 24 So. 582, 72 Am. St. Rep. 925; Sulzby v. Palmer, 194 Ala. 524, 196 Ala. 645, 70 So. 1; Sanford v. Empire Land Co., 212 Ala. 568, 103 So. 655. The word "acting," as applied to the words "justice of the peace," is shown by the certificate of that officer to be a mere surplusage. The officer being a justice of the peace is prima facie presumed, as stated by his signature, to be exercising the jurisdiction, powers, and functions of his office in taking the acknowledgment. The positive testimony of J. J. England shows that he was such officer, and thus is judicial knowledge of such fact refreshed. Aiken v. McMillan, 213 Ala. 494, 106 So. 153.

[18] If it be conceded that the deed was insufficient to convey title, the testimony shows the payment of the purchase price by the grantee. Thereby the latter was vested with a perfect equity which a court of chancery jurisdiction will respect. Copeland v. Warren (Ala. Sup.) 107 So. 94.[2] Although the Phelps deed failed to designate the county, the county is sufficiently shown when that instrument is considered with all the other evidence. Jenkins v. Woodward Iron Co., 194 Ala. 371, 69 So. 646.

The deed from J. J. England to E. C. Thomason described the land conveyed as "¾ undivided interest," describing the same in the granting clause—there was no habendum clause other than the "warrant (to) defend against all claims or claimants." If the deed be construed as conveying only three-fourths of said grantor's interest, a decree pro confesso having been taken in favor of the St. Clair Springs Hotel Company against J. J. England, he is concluded thereby in this litigation. The court erred in not decreeing relief to cross-complainant, St. Clair Springs Hotel Company, as prayed for in the cross-bill as amended, and in dismissing said cross-bill. On its appeal the decree is reversed and remanded.

The cross-bill was not multifarious, and there was no error in overruling demurrer of Wilcox and McClendon thereto on that or any other ground. In that respect the decree is affirmed. The decree is also affirmed in respect to Balcomb, Collins, et al.

Reversed and remanded on direct appeal; affirmed on cross-appeal.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.

