(97 South. 353)

**HENDERSON et al. v. HENDERSON et al.**
(4 Div. 21.)

(Supreme Court of Alabama. May 24, 1923. Rehearing Denied June 28, 1923.)

**1. Executors and administrators ⬅473, 474 (1)—Administration may be removed to court of equity for construction of will and administration of trust.**

Under Gen. Acts 1915, p. 738, administration of estate may be removed from probate court to court of equity for construction of will and proper administration of trust, on due application by one entitled to such removal and construction.

**2. Wills ⬅470—Intent gathered from whole of will.**

Intent of testator is to be gathered from whole of instrument and all of its parts, after giving due consideration to its manifest scheme, and considering its spirit rather than its letter.

**3. Wills ⬅443—To be construed to form one consistent whole, if possible.**

If possible, will should be construed to make it form one consistent whole, where general and primary interest prevails over secondary interest to the contrary.

**4. Perpetuities ⬅4(15)—Question determined as of date of delivery of instrument creating trust.**

Question of remoteness of trust sought to be created is to be determined from date of delivery of conveyance or other instrument, other than will seeking to create the trust.

**5. Wills ⬅481—Speaks from testator's death.**

Will speaks from testator's death, and estate and its nature must be determined as of that date, and whatever estate, legal or equitable, testator then possessed, must be held to have passed or not passed, according to terms of the will.

**6. Wills ⬅849—Property undisposed of goes to residuary legatee or, if there is none, to next of kin.**

When effectual disposition is not made by will, the residue, if personal property, vests in residuary legatee; and, if there is no residuary legatee, it goes to next of kin under statute of descent and distribution.

**7. Wills ⬅865(4)—Real estate undisposed of descends to heirs.**

Real estate undisposed of by will descends to heirs at law.

**8. Wills ⬅628—Remainder contingent when futurity annexed to substance of gift, but not otherwise; "vested;" "contingent."**

If futurity is annexed to substance of gift, it is "contingent"; but, if merely annexed thereto as to time of payment, enjoyment, or delivery of possession, the estate is "vested," within Code 1907, §§ 3398–3401, the law favoring vesting.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contingent; Vest.]

**9. Trusts ⬅359(2)—Cestui que trust may resort to equity in case of trustees' breach of duty.**

A court of equity is always open to cestui que trust in case of willful or manifest breach of duty by trustees.

**10. Perpetuities ⬅9(6)—Trust held not one for "accumulation" merely.**

Under will giving property equally to testator's wife and children other than J. and to trustees for J., and providing for keeping real estate together, for renting or leasing it, and for equal division of proceeds, J.'s part to be paid to his trustees, to be used as they might think best, and providing for like division on collection of personal property, the trust *held*

not one for "accumulation" merely, within Code 1907, § 3410, limiting duration of such trusts.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accumulate—Accumulation.]

**11. Perpetuities ⊜⟹9(2)—Incidental accumulation of undistributed income held not to make trust one for accumulation.**

If trust provides for periodical distribution and expenditure of income and part of estate deemed necessary, the trust is not one for accumulation merely, under Code 1907, § 3410, though, in administration of trust, the whole income may not be expended or distributed, and to such extent there may be an incidental accumulation.

**12. Perpetuities ⊜⟹9(2) — That trustee not compelled to pay over income held not to make trust one for accumulation.**

That trustee may not be compelled to pay over to cestui que trust the entire net income accruing, or any given amount, at designated time, from one or other of general sources of income, does not make the trust one for accumulation, within Code 1907, § 3410.

**13. Perpetuities ⊜⟹4(15), 7(2)—Trust not too remote, when estate may be vested within time prescribed by common law and statute.**

If trust is terminable or destructible, and every condition precedent will be fulfilled, and every possible contingency will have happened, and estate will have vested and trust terminated within time prescribed by Code 1907, § 3417, as to real estate, and common-law rule against perpetuities obtaining as to personal property, it is not too remote.

**14. Wills ⊜⟹672(1)—Beneficiaries held to take property free from trust.**

Under will giving property equally to wife and children other than J., and to trustees for J., and providing for keeping real estate together, renting or leasing it out, and dividing proceeds, and also proceeds of personal property, the wife and children, other than J., *held* to take their interests free from trust.

**15. Wills ⊜⟹686(2)—Trust held for beneficiary's support and to continue only for his life.**

Under will giving property equally to wife and children other than J., and trustees for J., and providing for keeping real estate together, and for division of proceeds of rentals, etc., and of personal property, and for payment of J.'s share to his trustees, to be used as they might wish and think best, trust for J. *held* created to enable trustees to provide for his support, and to terminate on J.'s death.

**16. Perpetuities ⊜⟹4(5)—That persons composing class of remaindermen may not be known until termination of trust held not to affect it.**

That it may not be known who are all the individuals composing class to take remainder until duties of trust are accomplished by distribution, or before the death of cestui que trust and merging of life estate into remainder, does not affect it, where remaindermen will be born within the required time.

**17. Trusts ⊜⟹129—"Active trust" and "naked trust," or "passive trust," defined.**

Trust is active when interposition of trustee is necessary to carry out its purpose with respect to immediate or remote beneficiaries, or to accomplishment of any object of settlor, or if it is necessary that legal estate should remain in trustee, and is naked or passive, and within Code 1907, § 3408, executing the use, when trustee has no active duty to perform, and the trust serves no purpose that would not be served without it; trustee being mere depositary of naked title charged, without power to take possession, manage, or control the property.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Active Trust; Passive Trust.]

**18. Wills ⊜⟹681(1)—Trust for care and maintenance of son held not dry or "naked trust."**

Under will giving property equally to testator's wife and children other than J., and trustees for J., and providing for keeping real estate together and for dividing proceeds of rentals, etc., and of personal property, J.'s part being paid over to his trustees, to be used as they might wish and think best, the trust *held* not dry or naked trust.

**19. Perpetuities ⊜⟹4(15), 7(2) — Trust held not to offend rule.**

Under will giving property equally to testator's wife and children other than J., and to trustees for J., and providing that real estate should be kept together for five years, and rented out or leased, and the proceeds, as well as proceeds of personal property, distributed, J.'s part being paid to his trustees, the trust *held* not to violate Code 1907, § 3417, as to real property, or common-law rule against perpetuities, as to personal property.

**20. Partnership ⊜⟹20 — Various instruments creating partnership and trust construed together.**

Instruments executed by H. and his wife and children, creating partnership and trust for benefit of J. in an undivided interest in partnership, and conveyances by H. and his wife to the partnership, also containing trust provisions, *held* to be construed together.

**21. Trusts ⊜⟹140(1) — Cestuis que trustent held to take no interest, except through trustees.**

Under instruments creating partnership between H. and his wife and children, and placing interest in partnership in trust for J., a son, and his wife and daughter, J. and his wife and daughter *held* to take no interest in the partnership and trust property, except through the trustees.

**22. Partnership ⊜⟹20 — Trusts ⊜⟹51 — Creation of partnership and trust in same instrument held not contrary to law.**

Where partnership was created between H., his wife, and children, other than J., and the same persons and another as trustees for J., partnership relation and trusts created *held* not in conflict, and creation by same instruments not contrary to law.

⊜⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**23. Trusts ⬦140(3)—All children of cestuis que trustent held to take remainder, but daughter alone to share in income during continuance of trust.**

Under instruments creating partnership and placing interest therein in trust for J. during his life, and after his death for benefit of a daughter and any other children which he might have, and also providing for payments from income to J.'s wife and daughter, remainder, after J.'s death, *held* to vest in all of his children, but the daughter alone entitled to share in income during J.'s life.

**24. Trusts ⬦280—Trustees held not limited to payments suggested in making payments of income to cestuis que trustent.**

Under instruments creating trust for support of J. during his life, and also making provision for J.'s wife and daughter, suggested amounts of monthly payments to J. and the daughter *held* merely advisory, and not to limit trustees to such amounts.

**25. Trusts ⬦280—Payments for maintenance and education held to be made only out of income of trust fund.**

Under instruments creating partnership between H. and his wife and children, and placing share therein in trust for J., and also making provision for maintenance and education of J.'s daughter, payments for such purposes *held* intended to be made only out of income of trust fund, and not out of the general estate.

**26. Perpetuities ⬦4(15)—Trust held not to violate statute or common-law rule.**

Under instruments creating partnership and placing interest therein in trust for J. during his life, with remainder to his children, and also making provision for support of J.'s wife for her life or until her remarriage, and for maintenance and education of J.'s daughter until her marriage, trust *held* not to violate common-law rule against perpetuities, or Code 1907, § 3417, as to real estate.

**27. Trusts ⬦280—Trustees held authorized to pay income to cestui que trust or use it for his benefit, but not to use corpus.**

Under instrument creating trust for benefit of J. and his wife and daughter, trustees *held* authorized, subject to provisions for the other cestuis que trustent, to pay income to J., or use it for his benefit, or in payment of obligations incurred by him, but not to use any part of corpus.

**28. Trusts ⬦280 — Agreement between trustees and cestuis que trustent for payment of alimony in lieu of provisions made by trust deed held valid.**

Under instruments creating trust for J. for life, and also making provision for support of J.'s wife, and for maintenance and education of a daughter, agreement between the trustees, J., and the wife for payment of alimony in lieu of provisions made by trust deed *held* binding.

**29. Trusts ⬦192 — Trustees of interest in partnership held authorized to join other partners in sales and conveyances without signatures of cestuis que trustent.**

Under instruments creating partnership and placing interest therein in trust for J. and his wife and daughter, trustees *held* authorized to sell, convey, and invest and reinvest trust property, and to join other partners in conduct of its affairs and in sales and conveyances without signatures of the cestuis que trustent.

**30. Partnership ⬦58 — Trusts ⬦61(2) — Agreement creating partnership and trust held to continue after death of one partner.**

Instruments creating partnership between H., his wife and children, and placing interest therein in trust for a son, *held* to show intention that partnership and trusteeship should extend after H.'s death for such time as the parties in interest might treat it as continuing.

**31. Appeal and error ⬦839(2) — Supreme Court authorized to ascertain intent from whole instrument, though no appeal taken as to particular matter.**

Though no appeal was taken with respect to charitable trust sought to be set up by instruments, the construction of which was involved, Supreme Court might ascertain and declare grantor's intent as given expression in the whole instrument.

**32. Charities ⬦21(1)—Difficulty of ascertaining beneficiaries does not affect charitable trust.**

That difficulty may attend ascertainment of some of beneficiaries after death of person creating trust does not affect charitable trust, if effectively created by trust deed.

**33. Perpetuities ⬦8(1)—Charitable trusts not generally forbidden.**

Speaking generally, charitable trusts are not prohibited by Code 1907, § 3417, or by the common law against perpetuities.

**34. Wills ⬦88(2)—Test of whether instrument is "deed" or "will" stated.**

If maker of instrument intended any estate or interest thereunder to vest before his death and before its execution, the instrument is a "deed"; but, if he intended that all interest and estate should take effect only after his death, it is a "will."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Deed; Will.]

**35. Trusts ⬦52—Charitable trust held testamentary, and void for want of probating of instrument, but not to affect other trusts.**

Under instruments creating partnership and certain trusts, including charitable trusts, such charitable trusts *held* ambulatory and testamentary, and ineffective for want of probate of the instrument as testamentary instrument, but not to invalidate other trusts therein created.

Appeal from Circuit Court, Pike County; Arthur B. Foster, Judge.

Bill by Sallie E. Henderson, Gussie Henderson Jones, Fred W. Henderson, Fox Henderson, Jr., and Frank L. Jones against Jake Henderson, Mary Henderson, and Dorothy Henderson, a minor, for removal of the administration of the estate of Fox Henderson, deceased, from the probate court to the circuit court in equity and for the construction

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of the will of said Fox Henderson. From the decree, defendants Jake Henderson and Dorothy Henderson, by her guardian ad litem, appeal. Corrected and affirmed in part, reversed in part, and remanded.

It is shown by the bill that Fox Henderson died June 13, 1918, possessed of considerable property; that on January 1, 1917, he prepared and had executed what purported to be articles of partnership between himself, his wife, and his children; that he and his wife executed a deed conveying all his property to the partnership so created, and himself executed an instrument transferring a large number of shares of the capital stock of various corporations to the partnership. It is further shown that at his death Fox Henderson left a last will, dated October 23, 1912, which has been duly probated.

The articles of partnership exhibited are in substance as follows:

"Troy, Pike County, Alabama,
"Monday, January 1, 1917.

"Know all men by these presents, that I, Fox Henderson, this day desire to form a new partnership in business, and have all and each of my children and my wife interested with me in said firm, which shall be known as Fox Henderson & Sons, and include in said partnership my wife and all my children and myself. Those interested in said Fox Henderson & Sons: Fox Henderson (myself) shall own a one-sixth (⅙) interest; Fox Henderson, Jr., shall own a one-sixth (⅙) interest; Sallie E. Henderson (my wife) shall own a one-sixth (⅙) interest; Gussie Henderson Jones shall own a one-sixth (⅙) interest; Fred W. Henderson shall own a one-sixth (⅙) interest; and Fox Henderson, Jr., and Fred W. Henderson and Fox Henderson (myself), and Mrs. Fox Henderson (my wife) and Gussie Henderson Jones, and Frank L. Jones, as trustees for Jake Henderson, without bond, shall own a one-sixth (⅙) interest. Each party interested is to share equally in all net gains and profits, to share and share alike each one in all gains and all losses in said business of Fox Henderson & Sons, and in a like manner in all losses of every kind sustained by the firm (that is, after all expenses of every kind connected with the business of said Fox Henderson & Sons in the way of living expenses and all others shown by expense account) are fully paid, as outlined to some extent hereafter but not fully, as there may be many new things to arise at different times that may call for expense, which, if right and correct, should be paid by the firm of said Fox Henderson & Sons; those that I will specially mention as follows: Fox Henderson, Jr., is to be paid for his services for the running of the business, keeping the books, making settlement, and keeping the business moving in every way, loaning out the money (on good security) at 6 and 8 per cent. interest, or at whatever rate of interest him and myself shall decide is best, while I am alive, and after my death at a rate the majority may agree on, or either Fox Henderson, Jr., may decide. The said Fox Henderson, Jr., for all the above is to receive a salary of fifteen hundred ($1,500.00) dollars per annum for his services. As for me and

my services, I make no charge whatever. I agree that all my time and judgment used in and for the good of the business shall be entirely free of charge. The main charge and item of expense that is made by me as against the business of Fox Henderson & Sons is the item of general expenditures, etc., charged by me on everything turned over to the business by me, which shall go to make up the capital stock of the said Fox Henderson & Sons, amounting to something in the neighborhood of say about, can't say as to amount, but will say it is, and shall be, about all the property I own of every kind whatever, the addition foots up when all amounts are transferred, all accounts made during the year (1917) nineteen hundred and seventeen, from January 1, 1917, or even November and December (taken for 1917), on up to the winding up of 1917. Thereafter as long as I live each account, note, or mortgage shall go into the business of Fox Henderson & Sons from the beginning of January 1, 1917, whether placed in the business at that date, or any other date before said year of 1917, or any other year thereafter; the only difference being that I am to get credit only for the year the said amount or amounts is put into the business, and on January 1st for the year in which it is placed in by me, let the amount be whatever it may, as it is my full intention to place the majority, if not entirely all, of what I own and possess, even now or at a future date, into the business of Fox Henderson & Sons, composed of Fox Henderson, Fox Henderson, Jr., Fred W. Henderson, Gussie Henderson Jones, and my wife, Sallie E. Henderson, and all of the above, or so many as may continue to live, Fox H., Fox H., Jr., Fred W. H., Gussie Henderson Jones, and Frank L. Jones, and Mrs. Fox Henderson as trustees for my unfortunate boy, Jake Henderson (without bond), his natural life, and at his death to go to the same trustees, or so many as may still live for the benefit of little Dorothy Henderson, his daughter and only child, and if any other children born of his (Jake's) then be treated to share equally with Dorothy by the same trustees. As to the amount to be paid to my unfortunate boy, Jake, and also to his child, Dorothy, or his children, if any others, by the trustees, I will mention later on after considering everything fully. In this agreement by me et al., and understanding as to the one-sixth (⅙) interest, I to-day give them from November or December's new business, 1916, which they will own in the firm at my death and any all of their share of profits and losses outside of my one-sixth individual interest, which is a one-sixth undivided interest. As to my individual interest of one-sixth in case of my death, I wish the entire amount which may stand to my credit on the books of Fox Henderson & Sons, a one-sixth interest in profits and losses from January, 1917, or on books of Fox Henderson, or that may be in my possession or due to me from any source whatsoever, to be disposed of as follows:

"First, I wish fifteen thousand dollars ($15,-000.00) of the money to my credit in the firm of Fox Henderson & Sons, which consists of my wife, Sallie E. Henderson, Fox Henderson, Jr., Fred W. Henderson, and Gussie Henderson Jones, and all of the above as trustees for my wayward boy, Jake Henderson, agents or

trustees, and to loan said amount at say 6 or 7 per cent. interest on land, and the net proceeds to be used each year in paying the pastors of the different churches, or the churches themselves, and to the Sunday schools and orphans' home, etc., my usual amount of say one hundred dollars each, and less to some, about the same as I do each year. As long as Mary, poor Jake's wife, remains single and unmarried, I want her cared for as we now do it, but should she marry and get herself a new husband, then are .not looked upon nor expected to care for her, or keep her up any longer, and I do not wish to do so. Little Dorothy, my boy Jake's dear little girl, I want her always cared for in every way out of my money, to my credit in said firm of Fox Henderson & Sons until she arrives at the age of maturity and then marry —— home and ask my boys as my heirs to see at all times that she never suffers for anything, and pay it out of money in the hands of the trustees for Jake Henderson to the amount of paying her bills, $75 or $80 per month if necessary (my own effects). Certain amounts must be set aside for the several purposes herein and hereafter mentioned, and loaned out by my boys and heirs, all of them, on land security at a fair interest, and the interest used only for these several purposes, the net amount of interest at 5 per cent., at 6 per cent., or 7 per cent., the best that can be done. Should it be necessary (in the event of my death before any of the other partners of the said firm of Fox Henderson & Sons) to use to the extent in all to the amount of thirty thousand dollars at interest in order that the net income from same may be sufficient to meet these several requests and others that I may hereafter mention, then I request specially that my wishes all be carried out so long as it may be needed. I also request that many poor widows and orphans be helped in a reasonable way, all out of what I may leave in event of my death. My wish is that my poor boy Jake Henderson be paid over to himself by the six trustees named herein the amount from one hundred to two hundred dollars or two hundred and fifty dollars each month during his life, if he should call for it for each month of every year, should the six trustees or the majority of them feel that it is well to do so, considering the manner in which he is acting at all times; otherwise, do not do so to this extent (you six trustees I am talking to) and only do what your judgment tells you do and no more. Jake has I feel shortened my days 10 or 15 years in worry and trouble in the way he has acted, but all this has never seemed to make a particle of difference with him, and of course I have to make the best of it from day to day. Notwithstanding all the trouble he has given me and worry and sleepless nights, he is still my boy, and I want him cared for as long as he may live. May the good Lord reform him and help him to do better in the future is my prayer, as no one who has never had a boy of this kind knows what worry, trouble,, and unhappiness he brings to his father and mother.

"The list below and on the attached piece of paper (if necessary) gives an itemized statement of the amount and kind of stocks which I this day grant, bargain, give, and convey and deliver to the firm of Fox Henderson & Sons, said firm composed (as before mentioned) of Fox Henderson, Fox Henderson, Jr., Sallie E. Henderson (the wife of Fox Henderson), F. W. Henderson, Gussie Henderson Jones (and the trustees as before mentioned, without any bond, for Jake Henderson), said trustees for Jake Henderson being Fox Henderson (as so long he is living), Fox Henderson, Jr., F. W. Henderson, Mrs. Fox Henderson, Gussie Henderson Jones, and Frank L. Jones; in case of death of any one or more of the above trustee, then the remainder to serve and carry out all my wishes and request the same as if all were living, and I expressly state that they do so without being required to give any bond whatever, but all jointly without bond.

"A complete list of all stocks transferred are listed below, and any that are overlooked and left out are intended to be included the same as if listed. * * *

"The balance of this agreement is . carried over to four other sheets like this, fully itemized, with each of our signatures same as this one.

"Given under our hands and seals this the first day of January, 1917.

| | |
|---|---|
| "Fox Henderson. | [L. S.] |
| "Sallie E. Henderson. | [L. S.] |
| "F. L. Jones. | [L. S.] |
| "Gussie H. Jones. | [L. S.] |
| "Fox Henderson, Jr. | [L. S.] |
| "Fred Henderson. | [L. S.] |
| "Fox Henderson, | [L. S.] |
| "Sallie E. Henderson, | [L. S.] |
| "F. L. Jones, | [L. S.] |
| "Gusse H. Jones, | [L. S.] |
| "Fox Henderson, Jr., | [L. S.] |
| "Fred Henderson, | [L. S.] |
| "Jake Henderson, | [L. S.] |

"Trustees for Jake Henderson.

"Witness:
"L. E. Bashinsky, N. P.
"V. H. Northcutt, N. P.

"All signers are parties to contract with Fox Henderson, Fox Henderson & Sons.

"Given under my hand and seal this the first day of January, 1917.

"Fox Henderson. [L. S.]
"V. H. Northcutt, N. P.
"L. E. Bashinsky, N. P.

*     *     *     *     *     *     *

"There may be some other accounts which will come in later that I have overlooked, and in reviewing I will find them, if any there should be, and then they will be brought down and added to this list and agreement, as this is the agreement with each one interested in this new firm, composed of Fox Henderson, Fox Henderson, Jr., Mrs. Sallie E. Henderson (my wife), Gussie Henderson Jones, Fred Henderson (Fox Henderson, trustee for Jake Henderson, Fox Henderson, Gussie Henderson Jones, and F. L. Jones, as trustees), trustees for Jake Henderson; all six above are to be trustees as before stated for Jake Henderson an equal interest with all the others and in everything to share and share alike; it being agreed and understood fully by and between each one who composes this new firm and this contract in the beginning of this year on January, 1917, that all of my effects of every kind, cash, books, all book accounts of all kinds, good, bad, and indifferent, and all stocks to be taken at cost just what the certificate of S. K. shows it rep-

resents and all bad debts and all kinds of debts to be taken the same way.

\*      \*      \*      \*      \*      \*      \*

"All stocks (which embrace all stocks I own of every kind) are all duly transferred to Fox Henderson & Sons, which said firm is composed of Fox Henderson, my wife, Mrs. Fox Henderson, Fox Henderson, Jr., Gussie Henderson Jones (my only daughter), Fred W. Henderson, and the trustees for Jake Henderson (my youngest son), said trustees are myself, Fox Henderson, my wife, Mrs. Fox Henderson, Fox Henderson, Jr., my daughter, Gussie Henderson Jones, and her husband, Frank L. Jones, and Fred W. Henderson, trustees for Jake Henderson, during his natural life, and at his death to be turned over to these same trustees mentioned above for the sole benefit of his little daughter, Dorothy Henderson, and the trustees to pay out for her such amounts as in their judgment seems correct and proper. I want her to be well educated in every way and well cared for, and all expenses of hers to be paid by the trustees out of the amount left them for Jake Henderson. The stocks mentioned above are transferred on the back of each certificate to the said firm of Fox Henderson & Sons and same are transferred by the company issuing them on the corporation, after being transferred by me, and all are in shape by me to be transferred on the books of each company or corporation issuing said stock at any time it is convenient to have it done, either by me or any member of said firm of Fox Henderson & Sons. There is to be no charges charged on any amounts turned over and given and delivered to this new firm of Fox Henderson & Sons and composed of those herein mentioned, and all consisting of myself and my wife and my children (and trustees for my boy Jake, and. from him to little Dorothy, page 7).

"As the consideration for the principal and interest of all cash, stocks, and all debts of every kind (one-sixth interest to each one of said firm), it is all given by me in consideration of five dollars from each one and the love and affection I bear for them, for my wife and each one of my children, and no other consideration required by me, as it is now absolutely theirs, except to Jake, and his interest goes to trustees for him, to the extent of a one-sixth undivided interest, reserving a one-sixth interest the same as theirs for myself, in all property of every kind turned over to the said new firm of Fox Henderson & Sons.

"In the transferring and absolutely giving and delivering of about all my cash as well as all my stocks and the principal part of my book accounts, notes and mortgages, to the firm of Fox Henderson & Sons, who is composed solely of (myself), my wife, and my children, a one-sixth undivided interest to each one directly and (indirectly to one, Jake), his (Jake's) interest going to trustees for his benefit. There are left a few old and big accounts on my books that I do not know hardly how to rate them to do fair and right by all concerned, but will do my best. Most of the parties are ones that are first due to loan companies with a mortgage on their land, and my only security behind loan company mortgage for old debts and big ones, the loan companies having loaned full up on their land for say ten years ahead and some longer (I will not itemize them below), as follows: \*    \*    \* "

The will mentioned in and exhibited with the bill is as follows:

"I, Fox Henderson, of the city of Troy, county of Pike and state of Alabama, being of sound mind and knowing the uncertainty of life and the certainty of death, do hereby make, publish and declare this my last will and testament in the manner and form and as hereinbelow stated:

"In the name of God, Amen:

"1st. I desire that all of my just debts and funeral expenses be paid as soon as can be conveniently done after my death.

"2d. All of my estate, real, personal, and mixed, and wheresoever situated, of which I may die, seized or possessed or to which I may be entitled at the time of my death, I give, devise and bequeath to my wife, Sallie E. Henderson, my daughter, Gussie Henderson Jones, my sons, Fox Henderson, Jr., Fred W. Henderson, and Fox Henderson, Jr., Frank L. Jones, Fred W. Henderson and Gussie Henderson Jones, Sallie E. Henderson, all being trustees jointly of and for Jake Henderson, jointly and equally, each to share and share alike and to have and to hold the same to them absolutely and forever, making each of them executors and executrixes of my estate. without any bond.

"3d. This provision for my wife to be in lieu of all rights of dower in my estate.

"4th. I wish all of my real estate kept together and not divided for a period of five (5) years from the date of my death.

"5th. This real estate must be rented or leased out from year to year to the best advantage and the net proceeds collected (after paying for all necessary repairs and any other expenses necessary for the successful renting of same) the remainder of net proceeds to be divided equally between my wife and three children and Jake Henderson's part paid over to his trustees (Sallie E. Henderson, Fox Henderson, Jr., F. W. Henderson, Gussie Henderson Jones and Frank L. Jones) and paid over to them to be used by them as they may wish and think best, equally divided between the wife, Gussie, Fred W., Fox H., Jr., and trustees for Jake Henderson.

"6th. My executors and executrixes herein named shall have charge of all of the real estate as well as all the personal property.

"7th. My executors and executrixes are fully empowered to handle the personal property as they may deem best to make a division of any portion of money amongst themselves and trustees on the same kind of a division along at different times as good papers, mortgages on real estate and other securities are collected.

"8th. My executors and executrixes and trustees herein mentioned and named shall have the perfect right to execute, acknowledge and deliver all proper writings, deeds of conveyance and transfers to each other, or any other persons, any portion of real estate left by me at the time of my death, provided however that said conveyance or transfer of real estate shall not take place at any time within five years after my death.

"9th. I nominate, constitute and appoint my wife, Sallie E. Henderson, my daughter, Gussie Henderson Jones, my son Fox Henderson, Jr.,

Fred W. Henderson and F. L. Jones, trustees for Jake Henderson, executrixes and executors and trustees of this my last will and testament without bond.

"10th. In the case of death of any of the executors or executrixes and or trustees before the expiration of five years from the day of my death, then those remaining of the ones named of my wife and children and trustees for Jake Henderson, Sallie E. Henderson, Fred W. Henderson, Fox Henderson, Jr., Gussie Henderson Jones, and Frank L. Jones, trustees, shall have full power to carry out this will in all of its details. No bond required.

"11th. I further direct that none of the persons above mentioned that is Sallie E. Henderson (my wife) and the three children and trustees for Jake Henderson shall not be required to give bond or any security for the proper discharge of their duties.

"In witness whereof I have hereunto subscribed my name this the 23d day of October, 1912.

"This will will be witnessed by E. R. Partridge and L. L. Gellerstedt (E. R. Partridge and L. L. Gellerstedt).       Fox Henderson..

"The foregoing instrument was subscribed, sealed, published and declared by Fox Henderson to be his last will and testament in our presence and in the presence of each of us, and we at the same time at his request in his presence and in the presence of each other hereunto subscribe our names as attesting witnesses, this 23d day of October, 1912.

"Witness: E. R. Partridge.   L. L. Gellerstedt.

"I hereby state that all changes and alterations in the above have taken place before the signing up of same by me, this February 8, 1913.

"Fox Henderson, Troy, Alabama.

"I will further state that some of the changes made in this will were all made by me and at a later date, as in reading it over from time to time and more thoroughly studying each portion of it, I became more thoroughly convinced that such changes as I have made were absolutely necessary to be made and after full consideration of each item, I make the changes of my own free will and consent and without any persuasion from any one so to do.

"Fox Henderson.

"Witness: V. H. Northcutt, N. P."

Charlie C. McCall, of Washington, D. C., James J. Mayfield, of Montgomery, and C. C. Brannen, of Troy, for appellants.

The so-called partnership agreement was invalid for any purpose. 2 Chitty on Contr. 1339; 13 C. J. § 43; Gorham's Adm'r v. Meacham's Adm'r, 63 Vt. 231, 22 Atl. 572, 13 L. R. A. 676; White v. Toles, 7 Ala. 569; Howze v. Patterson, 53 Ala. 205, 25 Am. Rep. 607; Causler v. Wharton, 62 Ala. 358; Sabel v. Savannah, etc., Co., 135 Ala. 380, 33 South. 663. The trust feature of the instrument is void, because violative of the rule against perpetuities. Code 1907, § 3417; In re Walkerly, 108 Cal. 627, 41 Pac. 772, 49 Am. St. Rep. 97; Bigelow v. Cody, 171 Ill. 229, 48 N. E. 974, 63 Am. St. Rep. 230; Schettler v. Smith, 41 N. Y. 328; Barnum v. Barnum, 26 Md. 119, 90 Am. Dec. 88; Deford v. Deford, 36 Md. 168; Lyons v. Bradley, 168 Ala. 505,

53 South. 244; Perry on Trusts, § 382. The trust sought to be created failed at the death of Fox Henderson. 2 Beach on Trusts, 1203; 47 Am. Dig. (Cent. Ed.) § 306. A spendthrift trust is not authorized under the laws of this state. 25 R. C. L. 351; Rugely v. Robinson, 10 Ala. 702; Taylor v. Harwell, 65 Ala. 1; Jones v. Reese, 65 Ala. 134.

A. G. Seay, of Troy, and Rushton & Crenshaw, of Montgomery, for appellees.

A trust which provides for the expenditure of the income from the property, in whole or in part, cannot be one for accumulation merely.. Code 1907, § 3410. The charitable trust fastened upon the testator's reserved interest was valid, and its postponement until his death did not make it ambulatory. Abney v. Moore, 106 Ala. 131, 18 South. 60; Jordan v. Jordan's Adm'r, 65 Ala. 306; Rice's Adm'r v. Rice, 68 Ala. 218; Crocker v. Smith, 94 Ala. 297, 10 South. 258, 16 L. R. A. 576. A trust in which the trustees are authorized to pay to a spendthrift a larger or smaller proportion of his income, as they deem best for him, will be upheld in equity. Beach on Trusts, § 564; Pom. Eq. Jur. (4th Ed.) § 989; Bowlin v. Citizens' Bank, 131 Ark. 97, 198 S. W. 288, 2 A. L. R. 575; Jourolmon v. Massengill, 86 Tenn. 81, 5 S. W. 719; Code 1907, § 3409.

THOMAS, J. The present bill, filed August 17, 1921, was not filed within 12 months after the admission of the will to probate in this state on August 15, 1918. The last will of Mr. Fox Henderson, deceased, was admitted to probate by the probate court of his county without contest in that court or in the chancery court. Code, § 6207.

The complainants in the court below filed the bill, setting up all the facts, asking that the administration of the estate of Mr. Fox Henderson, deceased, be removed to the equity court for construction of the will and other instruments exhibited containing trust provisions, and to advise the trustees from time to time as to their duties and powers in the administration of the trust. Mr. Fox Henderson, the testator and grantor of the several written instruments exhibited by the bill, is averred to have died on June 13, 1918.

Mr. Jake Henderson, a son of decedent, and one of the codefendants in the court below and appellants here, filed an answer and cross-bill setting up that the deed and "partnership agreement" were ineffective for want of delivery, and that, if the deed be held as having been delivered, the trust powers were void as offending the rule against perpetuities. Mrs. Mary Henderson and Dorothy Henderson, as codefendants, did not appeal. The Act of April 21, 1911 (Acts 1911, p. 589), providing for an appeal by party defendant without taking it in the name of a codefendant, by serving notice or summons on the nonappealing codefendants to appear and

unite in the appeal, was duly complied with. There was appearance in this court and the due assignments of error for Dorothy Henderson. L. & N. R. Co. v. Shikle, 206 Ala. 494, 90 South. 900; Sherrod v. McGruder, 209 Ala. 260, 96 South. 78.

[1] The administration of an estate may be removed from the probate court to a court of equity for construction of a will, to a proper administration of the trust in the latter court, on due application by one entitled to have such removal and construction. Gen. Acts 1915, p. 738; Crawford v. Carlisle, 206 Ala. 379, 382 (1), 383 (3), 89 South. 565; Fowlkes v. Clay, 205 Ala. 523, 88 South..651; Dent v. Foy, 204 Ala. 404, 85 South. 709; Jemison v. Brasher, 202 Ala. 578, 81 South. 80; Caldwell v. Caldwell, 204 Ala. 161, 85 South. 493; Gunter v. Townsend, 202 Ala. 160, 79 South. 644; Carroll v. Richardson, 87 Ala. 605, 6 South. 342. The learned counsel for appellant has made the admission, saying:

"At the outset, we must confess that it has been impossible, after a thorough and diligent investigation of the law, to find a case or cases analogous to this one. We submit that the decision in this case must be governed by fundamental principles of law as to which no authorities need be cited. The case is utterly strange."

[2, 3] It is unnecessary to restate the cardinal rules of construction as to testamentary instruments. Pearce v. Pearce, 199 Ala. 491, 74 South. 952; Ralls v. Johnson, 200 Ala. 178, 75 South. 926; Gunter v. Townsend, 202 Ala. 160, 79 South. 644; Jemison v. Brasher, 202 Ala. 578, 81 South. 80; Caldwell v. Caldwell, 204 Ala. 161, 85 South. 493; Fowlkes v. Clay, 205 Ala. 523, 88 South. 651; Crawford v. Carlisle, 206 Ala. 379, 89 South. 565. We may say, however, that the application of common sense in the interpretation of Wills has made the testator's intention (if lawful) the law of the instrument; that this intent is to be gathered from the whole instrument and all of its parts after taking due consideration of the manifest scheme of the testator to ascertain its spirit, rather than its letter; and, if possible, to make the will form one consistent whole, where the general and primary interest prevails over a secondary interest to the contrary. Fowlkes v. Clay, 205 Ala. 523, 525, 88 South. 651.

[4-7] The question of remoteness of a trust sought to be created is to be determined from the date of the delivery of the conveyance, or other written instrument (not a will) seeking to create the trust. A will speaks from the death of the testator, and the estate and nature thereof (not the quantum) must be determined as of that date, and whatever estate, legal or equitable, the testator then possessed must be held to have passed, or not to have passed, according to the terms of the will. Crawford v. Carlisle, 206 Ala. 379, 387, 389, 89 South. 565; Caldwell v. Caldwell, 204 Ala. 161, 85 South. 493; Pearce v. Pearce,

199 Ala. 491, 74 South. 952; Dallas Compress Co. v. Smith, 190 Ala, 423, 433, 67 South. 289; Blakeney v. DuBose, 167 Ala. 627, 636, 637, 52 South. 746. When an effectual disposition is not made by will, the residue, if personal property, is invested in the residuary legatee; and if there is no residuary legatee provided, such personal estate goes to the next of kin, under the statute of descent and distribution. Real estate, undisposed of by will, descends to the heirs at law. Crawford v. Carlisle. supra; Trustees of Cumberland University v. Caldwell, 203 Ala. 590, 84 South. 846; Johnson v. Holifield, 82 Ala. 123, 2 South. 753; Denson v. Autrey's Ex'r, 21 Ala. 205; Chighizola v. Le Baron, 21 Ala. 406, 411.

[8] As to whether estates are vested or contingent, a test is, if futurity is annexed to the substance of the gift, it is said to be contingent; if it is merely annexed thereto as the time of payment, enjoyment, or delivery of the possession, the estate is vested. Crawford v. Carlisle, 206 Ala. 379, 380, 384 (10), 89 South. 565 (and many authorities there cited); Code 1907, §§ 3398-3401. It will be further noted that the rules of law favor the vesting of estates, for the reason that estates should become absolute at the earliest moment, and doubtful or obscure clauses have been so construed as to attain such result. Pearce v. Pearce, 199 Ala. 491, 501, 74 South. 952; Montgomery v. Wilson, 189 Ala. 209, 66 South. 503; Campbell, Guardian, v. Weakley, Adm'r, 121 Ala. 64, 25 South. 694.

The writer wishes to observe that there are several decisions back of Thellusson v. Woodford, 4 Ves. Jr. 227; s. c. 11 Ves. Jr. 112, 116, 119, dealing with the rule "against remoteness." In Pells v. Brown (1620) Croke's Reports (James) 590, the question first arose on account of the sustaining of executory devises, and under this decision there was the possibility of indefinitely tying up property, and reasons of public policy were urged against this result, and the rule as we now have it, under the common law, was the outcome. In Scattergood v. Edge, 12 Modern Reports, case 488 (Easter Term, 11 William III, 1689-1712) pp. 278, 287, the Chief Justice observed, of executory devises, that they "had not been long countenanced when the judges repented them, * * * and therefore there are bounds set to them, viz. a life or lives in being." V M. A. L. § 238, p. 185. A growth of the rule was in the Duke of Norfolk's Case, 3 Ch. Ca. 1, 2 Ch. Rep. 229, a, Freem. 72, where it was declared that a future contingency on a contingency is not too remote, if "it must take effect within a life in being." As to the number of lives in being, it has long been held in England that there is no objection on the ground of remoteness that an estate be limited to last or extend during "several lives in being at the time the estate is created rather than simply during one life in being." In Lowe v. Burron (1727-1735) 3 Peere Williams' Rep.

case 65, pp. 262, 265, the Lord Chancellor said that there—

"can be no danger of a perpetuity; for all these estates will determine on the expiration of the three lives. So, if, instead of three, there had been twenty lives, all spending at the same time, all the candles lighted up at once, it would have been good; for, in effect, it is only for one life (viz.) that which shall happen to be the survivor."

As we pointed out in Crawford v. Carlisle, 206 Ala. 379, 386, 89 South. 565, the question was given definite consideration in the announcement made in Thellusson v. Woodford, 4 Ves. Jr. 227, 11 Ves. Jr. 112, which caused the passage of the "Thellusson Act," 39 and 40 George III, c. 98 (same statute cited as St. 39 George III, July 28, 1800). The outcome was the common-law rule that the estate may be conditioned or the contingency postponed for any number of lives, in being, and the person or persons designated (the life or lives in being) need have no interest in the estate: Provided, however, that the number of lives designated must not be so great that it will be impossible to determine by evidence when the last survivor shall die. V M. A. L. §§ 240, 241, pp. 186, 188. In Fitchie v. Brown, 211 U. S. 322, 29 Sup. Ct. 108, 53 L. Ed. 202, 205, 206, it is well stated by Mr. Justice Peckham that:

"It is conceded by all * * * there is no statute in Hawaii governing the subject, except the statute making the common law applicable there, and that the utmost extent of a trust at common law is limited by lives in being at its creation and for twenty-one years thereafter; that the lives must be selected by the testator in his will; that they must be ascertained lives—i. e., lives that can be distinguished; and the fact of the death of the last survivor must be capable of being made out by reasonable evidence (Thellusson v. Woodford, 4 Ves. Jr. 227; s. c. 11 Ves. Jr. 134, 146; In re Moore [1901] 1 Ch. 936), and the selected lives need not be those having an interest in the property."

Mr. Gray's statement of the rule of the common law against perpetuities is as follows:

"No interest subject to a condition precedent is good, unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the creation of the estate." Gray, Perpetuities (2d Ed.) § 201.

To this it may be added, in case of necessity, that of an infant in ventre sa mère, "the period of gestation thereafter." Mr. Marsden, in his "Perpetuities and Accumulation," p. 3, quotes from Lord Kenyon, saying, of these limitations on estates, that they "are void, unless they necessarily vest, if at all, within a life or lives in being and 21 years and 9 or 10 months afterwards." Jee v. Audley (1787) 1 Cox's Ch. Cases, 324, 325; V M. A. L. § 236; Smith, Executory Interests, §

210 ALA.—6

706; Cadell v. Palmer, 1 Clark & Finnelly's Rep. 372.

It is necessary that we note, of a trust for "accumulation" under the common law, that it is created where the income of real or personal property is required by the instrument creating the trust, to be retained and set aside for augmentation and accretion to the principal, pursuant to the provisions of a will or deed preventing that income from being expended before the date fixed. Marsden, Perpetuities and Accumulation, p. 314 et seq.; 21 R. C. L. (IV) p. 341; Gray's Rule Against Perpetuities (2d Ed.) § 671; Hascall v. King, 162 N. Y. 134, 56 N. E. 515, 76 Am. St. Rep. 302. Such a trust, under the common law, may be established for the period of a life or lives in being and 21 years afterwards, and, in addition, for the period of gestation, where gestation existed, or it may be created for a period of years, stated in gross as 21 years and the period of gestation. A proposed trust having for its object an "accumulation" beyond the period mentioned, whether declared before or after the Thellusson Act, is held void for remoteness. Griffiths v. Vere, 9 Ves. Jr. 127; Thellusson v. Woodford, 4 Ves. Jr. 227, 11 Ves. Jr. 112. The New York statute (1 R. S. p. 726, §§ 37, 38) has been interpreted as we have indicated. Boynton v. Hoyt (1845) 1 Denio (N. Y.) 53; Kilpatrick v. Johnson, 15 N. Y. 322; Hawley v. James (1836) 16 Wend. (N. Y.) 61. In Boynton v. Hoyt, supra, it was declared, of a trust for accumulation, that:

"The property was devised to Boynton and Yeomans, in trust to receive the rents and profits, and apply them to the use of the family, * * * a valid trust under the third subdivision of the 55th section of the statute, *so far as relates to the object or purpose for which it was created.* There is also *a trust for accumulation;* but that is void for the reason that it directs an accumulation of rents and profits for the benefit of an adult—the wife—as well as the minor children. *Such a trust* must be for the benefit of minors only. Sections 36–38; Hawley v. James, 16 Wend. 61." (Italics supplied.)

It would appear that in Alabama and in Pennsylvania statutes were enacted based on the Thellusson Act. St. 30 and 40 George III, c. 98; Gray, Perpetuities, p. 512 et seq. The Pennsylvania statute provides that no person, by deed, will, or otherwise, settle or dispose of real or personal property in such manner as that the rents, interest, shares, or profits thereof shall be wholly or partially accumulated for any longer term than the life or lives of any such grantor, or grantors, settlor, or settlors, or testator, and the term of 21 years from the death of any such grantor, settlor, or testator. Gray's Rule Against Perpetuities, p. 527. In New York the only trust for accumulation is, as indicated, for the benefit of minors. Hascall v. King, 162 N. Y. 134, 142, 56 N. E. 515, 76 Am. St. Rep. 302; Gray's Rule Against Perpetuities, pp. 541, 543. Thus the New York statute is dif-

ferent and not as broad as the Alabama statute (Code 1907, § 3410), which is sui generis as to its limitation in gross "for a longer term than ten years." In the Thellusson Act and Pennsylvania statute prohibition was against accumulation in whole or in part, except as indicated. The Alabama statute is directed to a trust for "accumulation merely," which may not be "for a longer term than ten years," unless when "for the benefit of a minor in being at the date of conveyance, or if by will, at the death of the testator, in which case the trust may extend to the termination of such minority." In Hascall v. King, supra, Mr. Chief Justice Parker says:

"The meaning which the word 'accumulation' has in course of time come to have in our law is stated * * * as follows: 'The adding of the interest or income of a fund to the principal, pursuant to the provisions of a will or deed *preventing its being expended.* The law imposes restrictions on the power of a testator or creator of a trust to prohibit thus the present beneficial enjoyment of a fund in order to increase it for a future generation.' "

The best interpretation of the specific and unequivocal language employed in the Alabama statute is its terms. The statute is:

"*Trusts for Accumulation Merely; Limitation upon Extent.*—No trust of estate for the purpose of accumulation only can have any force or effect for a longer term than ten years, unless when for the benefit of a minor in being at the date of conveyance, or if by will, at the death of the testator; in which case the trust may extend to the termination of such minority." Code 1907, § 3410.

There is no direct construction by this court of section 3410 that amounts to a definition of a trust for "accumulation merely." However, in Goodwyn v. Cassels, 207 Ala. 482, 93 South. 405, it is said (of a trust created by will, in many respects similar to that created by Mr. Fox Henderson for the benefit of his son, Mr. Jake Henderson):

" * * * Testator evinced no intent to create a trust 'for the purpose of accumulation only,' * * * but a trust for the objects and subjects of testator's bounty."

Mr. Young's will, in the last-named case, and the will in the instant case, contain no direction by the settlors or testators that the interest or income shall be added to the principal; on the contrary, the personal representatives and trustees in both wills are directed to use so much of the income or proceeds of the estate as may be, in their judgment, necessary for the cestuis que trustent.

[9,10] A court of equity is always open to the cestui que trust in the case of willful or manifest breach of duty by the trustees. Pearce v. Pearce, supra. The Alabama statute (section 3410) being sui generis, as we have indicated, it is to be noted that its prohibition is not 'against a trust having an incidental accumulation

dependent upon economic conditions and necessity of the cestui que trust, but it is a limitation on a trust for "accumulation merely," to the extent of the terms of the statute. The trust involved on this appeal, as declared in the will of Mr. Henderson, is clearly not one for "accumulation merely," but, as observed in Goodwin v. Cassels, 207 Ala. 482, 93 South. 405, is "a trust for the objects and subjects of testator's bounty"; the estate in the latter case being charged with support and maintenance of the wife, and support, maintenance, and education of children.

The reference to this statute in Bingham v. Sumner, 206 Ala. 266, 279, 89 South. 479, was in the dissenting opinion of the writer, and was merely by way of argument—"for the sake of argument." In Pearce v. Pearce, 199 Ala. 491, 505, 74 South. 952, the will created a trust for a minor less than 10 years of age at the death of the testator, to continue until the minor should become 25 years of age. This provision offended the rule against perpetuities, as well as section 3410 of the Code; and construction of that section (Code, § 3410) was unnecessary to decide that the bequest was invalid as to the period beyond the attainment of the minor of his majority. The reference to section 3410 in Ashurst v. Ashurst, 181 Ala. 401, 407, 61 South. 942, 943, was merely in the nature of a quære; there was express declination to answer, other than to say that this period of "10 years" fixed in the Code (section 3410) may evidence—

"a legislative license to testators and grantors to so fetter the estates devised or granted by them as to prevent their alienation for a fixed period of 10 years, but certainly not longer. This question was not before us, and it is therefore unnecessary for us to determine it."

Lastly we are brought to consider Campbell, Guardian, v. Weakley, Adm'r, 121 Ala. 64, 65, 69, 25 South. 694, 697. The decision was:

"Our conclusion is that complainant's intestate, said Jos. P. Mudd, and the other four named children, being alive at the expiration of the period of 10 years from testator's death, *took the estate absolutely as tenants in common.* The demurrer of the infant defendants, on the ground, substantially, that complainant's intestate having died before the division of said trust estate was made, they succeeded to all the rights thereto, to which their father would have been entitled if living, was properly overruled." (Italics supplied.)

It is observed, in discussion of the nature of the ultimate estate and as argument for the conclusion reached, that:

"It cannot be supposed, from the language employed, that the testator intended to give his executors a larger estate than one for 10 years. Moreover, this estate was given them for accumulation for the benefit of his devisees and legatees, and beyond 10 years, under the statute, as he is presumed to have known, **no**

estate created for such purpose could have any force or effect. Code, § 1031 (1835)."

The justice does not say it was a trust for "accumulation merely," but that it was a trust created for accumulation for the "benefit of his devisees and legatees"—"for the benefit of his children." The effect of this observation in the "moreover clause," of the nature of the estate for years, was arguendo a statement as to the character and powers of the personal representatives for years under the terms of Mr. Mudd's will. The question for decision, and that decided, was not changed by this preliminary observation of the powers and duties with which testator's personal representatives were invested —of maintenance and conduct of the affairs of testator, to the end that the estate may be duly preserved, and that there may be monthly or quarterly division of the net income to and for the object of testator's bounty. And it was merely decided that, since there had been no administration of the estate of Mr. Wm. S. Mudd, deceased, *to the extent of the "division of the trust estate"* (italics supplied) between the cestuis que trustent, before the death of Jos. P. Mudd (the father of appellant infant, and the son of Wm. S. Mudd), that appellant, Jos. P. Mudd (the infant represented by Campbell, guardian ad litem), did not take from the grandfather under his will, but from his father. The deciding factor was that the named children of Wm. S. Mudd, deceased (among whom was the father of appellant), were in life at the expiration of said 10-year trust period, dating from the death of testator. Thus the question for decision, and concluded by the affirmance, in Campbell, Guardian, v. Weakley, Adm'r, supra, was the character and extent of the ultimate interest taken in testator's estate by his son, Jos. P. Mudd, and by the other children of testator, or their descendants, at the expiration of the 10-year trust period, and not the nature of the trust set up for such term of years by the will.

[11, 12] If the trust created by the will of Mr. Fox Henderson provided for the periodic distribution and expenditure of the income, and such part of his estate as might be deemed necessary, proper, or advisable by the personal representatives and trustees in preserving his properties and in the distribution thereof to the object of his bounty, this power rendered the character of the trust as not being one for "accumulation merely" under the statute. Code 1907, § 3410. It is declared that, if the person to whom the accumulated income is to be paid has a vested indefeasible right to the possession of the principal, or the accumulations, then the direction to accumulate is an illegal restraint on the alienation, and such person can put an end to the accumulation at any time. Consequently such direction, being destructible at any time, to the extent of a proper al-

lowance, cannot be too remote. Gray's Rule Against Perpetuities, § 672. A court of equity being open to a cestui que trust to compel distribution in case of manifest breach of duty by a trustee, the power of periodic distribution of income destroys the character of the trust as that for "accumulation merely," or, as otherwise stated in our statute, for "accumulation only." The fact that in its due administration the whole income from the trust fund may not be expended or distributed, and, to such extent, is an incidental accumulation during the course of the administration, does not destroy the ordinary character of the trust and make of it a trust for "accumulation merely," or "accumulation only," as is the subject of section 3410 of the Code of 1907. That a trustee may not be compelled to pay over to the cestui que trust the entire net income accruing, or any given amount at a designated time, from the one or other of general sources of income, does not change the character of an ordinary trust to that for accumulation.

[13] If, under the will, the trust is terminable or destructible, and every condition precedent fulfilled, every possible contingency will have happened, the estate in every one has vested, the trust terminated within the time prescribed by statute as to real property, and within the rule against perpetuities obtaining as to personal property under the common law, it cannot be held too remote; that is to say, the limitations by which the trust set up in the will must be tested are the common-law rule against perpetuities, which is to be applied to the personal property bequeathed, and the provisions of section 3417 of the Code of 1907 applicable to devises and conveyances of land. To an understanding of the nature and extent of the trust created by the settlor, or grantor, and testator, we will now consider the provisions of the will of Mr. Fox Henderson. The second clause thereof is as follows:

"2d. *All of my estate, real, personal, and mixed, and wheresoever situated, of which I may die, seized or possessed or to which I may be entitled at the time of my death, I give, devise and bequeath* to my wife, Sallie E. Henderson, my daughter, Gussie Henderson Jones, my sons, Fox Henderson, Jr., Fred W. Henderson, and to Fox Henderson, Jr., Frank L. Jones, Fred W. Henderson and Gussie Henderson Jones, Sallie E. Henderson, all being trustees jointly of and for Jake Henderson, jointly and equally, each to share and share alike and to have and to hold the same, to them absolutely and forever, making each of them *executors and executrixes of my estate without any bond.*"

[14, 15] That is to say, the wife, daughter, and two sons (Fox, Jr., and F. W.) took their respective one-fifth interests in testator's estate free of a trust, and the one-fifth interest in the estate—of its money, funds, and properties—was given to the trustees to enable

them to support and provide for the cestui que trust named, and when the same is converted into money—as proceeds of sale or income and profits therefrom—corpus or income therefrom and thereof is required to be "paid over to them, to be used by them as they wish and think best" for the son and brother made the special consideration of this devise and bequest (items 2 and 5). By item 4, the real estate was required to be kept together for a period of 5 years from the date of testator's death. Provision is made, and indeed there is requisition of those in representative capacity, rent or lease from year to year to the best advantage, to do other things necessary, and to incur any necessary expense, for the successful renting of testator's property; and there is requirement that the net proceeds collected therefrom be "equally divided" between testator's wife, Sallie E. Henderson, and the three children, Fox, Jr., and F. W. Henderson, and Gussie Henderson Jones, and the trustees named for Mr. Jake Henderson. The nature of the fund or interest set up by way of a trust "for Jake Henderson," and later referred to by testator as "Jake Henderson's part [to be] paid over to his trustees," and with which the trustees had been invested by a former section of the will "absolutely and forever," was subject to the trust and to the extent we have indicated—"paid over to them, to be used by them as they may wish and think best—equally divided between the wife, Gussie, Fred W., Fox H., Jr., and trustees for Jake" (items 2 and 5). The specific provisions as to the real and personal property is that the personal representatives shall have charge of all of the real estate, as well as all of the personal property, and that such representatives and trustees under the will are fully empowered to handle the personal property "as they may deem best to make a division of any portion of money amongst themselves and trustees on the same kind of a division along at different times as good papers, mortgages on real estate, and other securities are collected" (items 6 and 7). The meaning of the expression "on the same kind of a division" of the proceeds of the sale of personal property, or income therefrom, had theretofore been defined in item 5, dealing with real properties, and proceeds therefrom. Provision is made for the appointment of personal representatives and trustees and giving them "full power to carry out this will in all of its details." The right of disposition is given, or implied, in the express power with which they are invested "to execute, acknowledge, and deliver all proper writings, deeds of conveyance, and transfers," etc. The unrestrained discretion is further given in the power of upkeep and expenditure for necessary repairs, the leasing and renting of the real property, collection, etc., that a proper income may be for distribution by the

trustees. There is no residuary clause. Caldwell v. Caldwell, supra; Johnson v. Holifield, supra. The manifest general purpose of testator was a final disposition of his entire estate. This is true of the trust set up for years or life. This trust estate is referred to as "for Jake Henderson," "Jake Henderson's part to be paid over" to his trustees, in the use of the words by testator, "each to share and share alike and to have and to hold to them absolutely and 'forever," and "equally divided between the wife" and other children named, and "trustees for Jake Henderson." When the trust for life for Jake had been accomplished, and there was no further reason for its existence after his death, the trusteeship ended; that is to say, the further holding of the title was only for the time beyond his death as to vest the remainder in his "next of kin" or "heirs at law" (Campbell, Guardian, v. Weakley, Adm'r, supra), which could not be longer than the birth of a child in ventre sa mère.

[16] The fact that it may not be known who are all of the individuals composing the class of the remainder, until the duties of the trust are accomplished by distribution or before the death of Jake Henderson, and the merging of the life estate into the remainder, does not affect the reversion. The remaindermen will be born within the required time, before or after Jake's death. Gray's, Perpet. 232, 421. At the expense of repetition, we quote the fifth and eighth items of the will:

"5th. This 'real estate must be rented or leased out from year to year to the best advantage and the net proceeds collected (after paying for all necessary repairs and any other expense necessary for the successful renting of same) the remainder of net proceeds to be divided equally between my wife, three children and Jake Henderson's part paid over to his trustees (Sallie E. Henderson, Fox Henderson, Jr., F. W. Henderson, Gussie Henderson Jones and Frank L. Jones) and paid over to them to be used by them as they may wish and think best, equally divided between the wife, Gussie, Fred W., Fox H., Jr., and trustees for Jake Henderson."

"8th. My said executors and executrixes and trustees herein mentioned and named shall have the perfect right to execute, acknowledge and deliver all proper writings, deeds of conveyance and transfers to each other, or any other persons, any portion of real estate left by me at the time of my death, provided however that said conveyance or transfer shall not take place at any time within five years after my death."

It will be observed, after a careful consideration of the will, and its every paragraph, which is before the court in the original handwriting of the testator, that it imposes active duties on the personal representatives and trustees named therein in the execution of the ordinary trust. The effect and nature of that trust set up in testator's properties

was that the fund made the subject of the trust is given to the trustees (named) to enable them to support and provide for the cestui que trust named, a son, who is made the special object and consideration of the testator.

Pertinent sections of the Alabama statute, coming unchanged to us from the Code of 1852, are:

"3408. *Uses, Trusts, etc., for Mere Benefit of Third Persons; How Operative.*—No use, trust, or confidence can be declared of any land; or of any charge upon the same, for the mere benefit of third persons; and all assurances declaring any such use, trust, or confidence must be held and taken to vest the legal estate in the person or persons for who the same is declared; and no estate or interest can vest thereby in any trustee.

"3409. *Certain Trusts may be Created Vesting Legal Title in Trustee.*—Nothing in the preceding section contained shall prevent the conveyance of real or personal property, or the issues, rents, and profits thereof, to another in trust for the use of the grantor, or his family, or of a third person, or for any other lawful purpose; but in such case the legal title vests in the trustee."

In You v. Flinn, 34 Ala. 409, 411, 414, Mr. Justice Stone makes the distinction between sections 3408 and 3409. He says that these statutes came to us from the New York statute, and he has carefully considered the construction given by that state to the same before such statutes were adopted by us, and concludes the matter by saying:

"While we must confess that the dividing line between the two sections is not so clearly defined as could be desired, we nevertheless think that the varying phraseology affords a sufficient guide to a proper and satisfactory solution. It will be observed, that section 1306 provides for an use, trust or confidence, for the mere benefit of third persons; while section 1307 contemplates conveyances in trust for the use of the grantor, etc. * * * Without further pointing out the particulars in which our statutes are less comprehensive than those of New York, we do not hesitate to declare, that section 1306 of the Code converts into legal estates in the beneficiary all titles and interests in lands, where the nominal title is vested in a naked or dry trustee—one who is not placed in possession, and who is required to perform no duties—and where the instrument creating such nominal title *declares* a use, trust, or confidence for another, to the same extent as if the deed or conveyance has been made directly to the beneficiary. On the other hand, it has no application to conveyances of either real or personal property, although the conveyance may declare that it is in trust for the use of the grantor or another: Provided the trustee is charged with the control, management, or other active duties in regard to the trust fund. This latter class falls under section 1307 of the Code" (of 1852.)

This construction or field of operation for the two statutes has ever since been adhered to by this court, and the statutes have been frequently readopted unchanged in the subsequent Codes since the foregoing construction by Judge Stone, which "has ever been followed." Kidd v. Cruse, 200 Ala. 293, 76 South. 59; Gunter v. Townsend, 202 Ala. 160, 79 South. 644; Coker v. Hughes, 205 Ala. 344, 87 South. 321; Reynolds v. Love, 191 Ala. 218, 68 South. 27; See, also, authorities in Bingham v. Sumner, 206 Ala. 266, 273, 89 South. 479.

It is argued by counsel that the trust created in the will of Mr. Henderson was what is variously called a passive, bare, naked, or "dry trust." Such a trust arises, says Mr. Perry—

"when property is vested in one person in trust for another, and the nature of the trust, not being prescribed by the donor, is left to the construction of law.' In such case the cestui que trust is entitled to the actual possession and enjoyment of the property, and to 'dispose of it, or to call upon the trustees to execute such conveyance. of the legal estate as he directs." 2 Perry on Trusts (5th Ed.) § 520, p. 62.

Mr. Beach says on the subject:

"In general, a passive or bare trust may be defined as a trust in which the trustee is simply a depositary of the trust estate," and "on the requisition of the beneficiary it is his duty to convey to·him, or to another, by his direction, the title to the trust property, and with the discharge of this obligation the trust terminates. Such trustees are designated as passive or naked trustees." Beach on Trusts and Trustees, § 554, pp. 1261, 1263.

[17] The authorities are to the effect that a trust "is active" when the interposition of the trustee is necessary to carry out its purposes with repect to immediate or remote beneficiaries, or it is necessary for the accomplishment of any object of the settlor that the legal estate shall remain in the trustee. ,Doe ex dem. Gosson v. Ladd, 77 Ala. 223; Connell v. Cole, 89 Ala. 381, 8 South. 72; Simmons v. Richardson, 107 Ala. 697, 18 South. 245; Trustees of Cumberland University v. Caldwell, 203 Ala. 590, 594, 84 South. 846. The test is said to be "that the trustee has imposed upon him expressly, or by implication, some active and substantial duty to perform, or useful purpose to subserve" (Tilley v. Letcher, 203 Ala. 277, 82 South. 527; Trustees of Cumberland University v. Caldwell, supra; Simmons v. Richardson, supra; Everett v. Jordan, 152 Ala. 259, 43 South. 811; Jordan v. Phillips, 126 Ala. 561, 29 South. 831), as that discretion is to be exercised (Tilley v. Letcher, supra; Simmons v. Richardson, supra) with respect to the control, protection, management, or disposition of the trust property, such as investment and reinvestment and care of the property (Trustees of Cumberland University v. Caldwell, supra; Tilley v. Letcher, supra), or the receipt and payment over

of the rents, income, profit, or proceeds of the trust property to or for another with remainder over (Gunter v. Townsend, 202 Ala. 160, 79 South. 644; Tolley v. Hamilton, 206 Ala. 634, 91 South. 610; McCurdy v. Kenon, 178 Ala. 345, 349, 59 South. 489; Edwards v. Edwards, 142 Ala. 267, 39 South. 82; Witter v. Dudley, 36 Ala. 135; Gandy v. Fortner, 119 Ala. 303, 24 South. 425), as in case of a spendthrift trust or to persons non sui juris (Tolley v. Hamilton, supra), or preserve the estate for a married woman (Simmons v. Richardson, supra), or the preservation of the estate for those in remainder (Doe ex dem. Gosson v. Ladd, supra; Tilley v. Letcher, supra; Tolley v. Hamilton, supra), or for sale and distribution (Connell v. Cole, 89 Ala. 381, 8 South. 72), or when the deposit of the title is in the trustee during a period pending which beneficiaries may come into being (Coker v. Hughes, 205 Ala. 344, 87 South. 321). In such trusts the legal title does not vest in the cestui que trust, and the use is not executed by the statute in them (You v. Flinn, 34 Ala. 409), "the title of the trustee continuing as long as it is necessary to support the title of the cestui que trust, or until its objects are accomplished and the trust executed" (Peake v. Yeldell, 17 Ala. 636; McBrayer v. Cariker, 64 Ala. 50; Jones v. Reese, 65 Ala. 134; Doe ex dem. Gosson v. Ladd, supra; Connell v. Cole, supra; Edwards v. Edwards, 142 Ala. 267, 39 South. 82). A trust is naked or passive when the trustee has no active duty to perform, or the trust serves no purpose that would not be likewise served without it, the trustee being the depositary of the naked title, charged with no duty, and without power to take possession or manage or exercise "any control over the property." Coker v. Hughes, supra; Reynolds v. Love, 191 Ala. 218, 68 South. 27; Kidd v. Cruse, 200 Ala. 293, 76 South. 59; Mason v. Pate's Ex'r, 34 Ala. 379; Tindal v. Drake, 51 Ala. 574; Wilkinson v. May, 69 Ala. 33; Connell v. Cole, 89 Ala. 381, 8 South. 72; Huntington v. Spear, 131 Ala. 414, 30 South. 787; Prince v. Prince, 162 Ala. 114, 49 South. 873; Jordan v. Phillips, 126 Ala. 561, 29 South. 831. In such case the statute of uses executes the use by connecting into the legal estate the beneficiary when no ultimate purpose exists. Code 1907, § 3408; Kidd v. Cruse, 200 Ala. 293, 76 South. 59. In Connell v. Cole, supra, the quotation is made from Mr. Pomeroy that:

"Where the primary object is to sell and dispose of the entire property in some manner, and to use the proceeds for some ulterior purpose, an active trust is the result." 2 Pom. Eq. Jur. § 91.

In Edwards v. Edwards, supra, and McBrayer v. Cariker, 64 Ala. 50, an active trust was said to result when the preservation of the legal estate was required until they who were entitled to take as after-born children could be ascertained, and the trust "ceased as soon as the purposes of its creation have been accomplished." The pertinent observation in Coker v. Hughes, 205 Ala. 344, 87 South. 321, is that to permit the statute (section 3408) to work the transmission of the title or ultimate estate (the contingent remainder) to the beneficiaries then in esse would have subverted the manifest intent of the instrument, and would have immediately invested his other children named with a title to a contingent remainder that the trust contemplated should abide in the trustee until it could be determined who would take when the life estate fell in or the contingency ceased to exist, has analogy in the instant case.

[18] In view of the specific duties required of the personal representatives and trustees, being the same persons, which duties and mutual interests are so commingled in the administration of the vast estate of testator, consisting of joint properties, the trust was not what is variously called a dry or a naked trust. To hold that the trust was a dry or a naked trust would defeat the manifest intention or purpose of the testator in providing what is called in law a trust for the care, support, and maintenance of a son, made the especial object of testator's protection and care, in the continued enjoyment of his bounty during life. When the whole will is considered, and the original is inspected as transmitted to us, we cannot escape the conclusion that the founder of such a trust intended to set up trust of such nature as to secure the enjoyment of his estate, to or for Mr. Jake Henderson, and, at the same time, provide that it should not be alienable by him or become subject to be taken by his creditors. Such trusts have been long permitted in this country (Nichols v. Eaton, 91 U. S. 716, 23 L. Ed. 254, 256, 257; Hyde v. Woods, 94 U. S. 523, 24 L. Ed. 264; Spindle v. Shreve, 111 U. S. 542, 4 Sup. Ct. 522, 28 L. Ed. 512; Shelton v. King, 229 U. S. 90, 33 Sup. Ct. 686, 57 L. Ed. 1086; Garland v. Garland, 87 Va. 758, 13 S. E. 478, 13 L. R. A. 212, 24 Am. St. Rep. 682, 686, note), and are within the terms of section 3409 of the Code. Such trusts are discussed in Nichols v. Eaton, 91 U. S. 716, 725, 23 L. Ed. 254, 256, 257, by Mr. Justice Miller, as follows:

" * * * But the doctrine that the owner of property, in the free exercise of his will in disposing of it, cannot so dispose of it, but that the object of his bounty, who parts with nothing in return, must hold it subject to the debts due his creditors, though that may soon deprive him of all the benefits sought to be conferred by the testator's affection or generosity, is one which we are not prepared to announce as the doctrine of this court. * * * Nor do we see any reason, in the recognized nature and tenure of property and its transfer by will why a testator who gives, who gives without any pecuniary return, who gets nothing of property value from the donee, may not

attach to that gift the incident of continued use, or uninterrupted benefit of the gift, during the life of the donee. Why a parent, or one who loves another, and wishes to use his own property in securing the object of his affection, so far as property can do it, from the ills of life, the vicissitudes of fortune and even his own improvidence, or incapacity for self-protection, should not be permitted to do so, is not readily perceived."

In Shelton v. King, 229 U. S. 90, 33 Sup. Ct. 686, 57 L. Ed. 1086, is reaffirmed the rule announced in Nichols v. Eaton, supra, and sustained a trust created by will, in the following language:

"In addition to Frank B. King, whom I have appointed executor, * * * I wish to appoint Wm. H. Saunders * * * and George W. White * * * cotrustees with the said F. B. King, to hold in trust the legacies devised to Jean Louisa, Anna Gertrude and Robert Philo Shelton, said trusteeship to terminate when these legatees shall receive their portions of my estate. And it is my further will that these legacies [to the parties named] shall be paid in full when the said Robert Philo Shelton shall reach the age of twenty-five years."

Mr. Justice Lurton, declaring that, aside from the alleged illegality of the trust, no ground is suggested for defeating the will of the testator, other than that it will be convenient and save the cost of continuing the trust, observes:

"The trust is not dry, but is active, and must continue, if not invalid, until the time of payment arrives." Lewin, Trusts (2d Am. Ed.) 488; Nichols v. Eaton, 91 U. S. 716, 724, 23 L. Ed. 254, 256.

Continuing, the justice declares:

"There is no pretense of perpetuity. Creditors are in no way concerned. If the testatrix saw fit to have this fund accumulate in the hands of trustees, and thereby postpone the enjoyment of her gift, why shall her will be disregarded? The restriction she imposed may protect her bounty against ill-advised investments and waste or extravagance. She did not undertake to guard against alienation, except in so far as the alienors will take subject to the same postponement of payment. * * * Nor did she undertake to protect against creditors as in Nichols v. Eaton, 91 U. S. 716, 23 L. Ed. 254. * * * But a very different question is presented when we come to the powers of a testator to so bestow that which is absolutely his own as to secure its beneficial enjoyment by an object of his bounty without being subject to the claims of assignees or creditors. This court, and the courts of a number of states of the Union, have not accepted the limitation which the English courts have placed upon the right of testamentary disposition, and have sustained trusts having as an object the application of a testator's bequest to the support and maintenance of the recipient of his bounty. They have, therefore, rejected the assumption that liability to creditors and freedom of alienation are necessary incidents to the right to enjoy the rents and profits of real estate, or the income from other property."

In the case of Tatum v. Commercial Bank & Trust Co., 185 Ala. 249, 252, 64 South. 561, the estate in remainder was vested in testator's children, and was not such a trust as we have in Mr. Henderson's will. It was held that the interest of defendant was not so blended with and inseparable from that of the other devisees as that a severance would prove destructive of the purpose of the gift, so as to prevent the defendant's right to alienate the property or to exempt it from being subject to the payment of debts. There was no application or construction of sections 3408 and 3409 of the Code in the Tatum Case. And, as we have shown, the immediate questions presented in the construction of the trust provisions contained in the will and partnership and trust deeds are merely whether or not the trusts declared by the testator and settlor are active or passive. Under the foregoing authorities, the trustees were charged with active duties in the administration of the respective trusts.

[19] The active trust created in Mr. Henderson's will in a one-fifth of the estate devised and bequeathed was by way of a provision for life for a child, and its limitation by time in gross is that the real estate shall be kept together and not divided for a period of five years from the date of the death of testator. It was the intention of the testator, as to the nature, duration, and discharge of the fund and trust with which the trustees were invested and charged, that in its administration they exercise the great discretion given them, to the end that the fund or properties be consumed by or distributed to the cestui que trust as deemed best by them according to his reasonable necessities. The trust thus set up was extended until the trust funds are exhausted, or the purpose of the trust accomplished, within the short time indicated beyond the term of the natural life of Mr. Jake Henderson. Therefore the trust did not offend the provisions of section 3417 as affecting the real property, nor was the rule of the common law violated in his disposition of personal property, and, not being a trust for "accumulation merely," its provisions did not offend section 3410 of the Code. The one-fifth interest in the properties of which Mr. Henderson died seized and possessed, or had an equitable interest therein, and subject to the trust set up in the will, were such properties which the testator did not carry, by his subsequent partnership agreements, trust deeds, and conveyances, into the partnership of Fox Henderson & Sons, or which he may have thereafter acquired and did not invest in that partnership.

We have ascertained and indicated in the foregoing construction of the trust provisions of Mr. Fox Henderson's will that the intent and general scheme of the testator, manifest

within its four corners, was to (and that he did) set up an active trust, with large discretion in the trustees, or survivors thereof. The whole will being before us for construction, and not isolated items or provisions thereof, our construction must, of necessity, be of the will as a whole, that the trustees may be properly instructed as to their duty in administering the entire trust estate, according to the expressed and lawful intention of the testator and settlor. Therefore we are constrained to say that the decree of the circuit court is in error, holding the trust to be naked or dry trust, as set up by the will in the properties and estate vested in the trustees as aforesaid, since the trustees were required to exercise active duties in the administration of the estate and the trusteeship, pursuant to testator's and settlor's will.

Having provided by will, of date October 23, 1912, for a disposition of all of his properties, thereafter Mr. Fox Henderson sought to dispose of most of his properties before his death, by several written instruments exhibited in the bill. These writings were the agreement for the formation of the partnership of Fox Henderson & Sons, of date January 1, 1917, and a continuation thereof, dated January 3, 1917. And as a part of the same purpose there was executed a deed of date January 22, 1917, by Mr. Fox Henderson and his wife, conveying to said firm of Fox Henderson & Sons all of his real properties, with the exception of five "homes" specifically described, and this instrument also contained specific trust provisions for an undivided interest of the property conveyed, and to the defined partnership rights therein. These respective instruments, being duly executed as conveyances by and between the parties as partners, and as trustees to an undivided interest, specifically set forth the purpose of the grantors in the conveying of the properties of Mr. Fox Henderson to the partnership and in trust, and fixed and defined the partnership agreement and trust provisions thereof. There was also an instrument in writing, signed by Mr. Henderson, dated "Troy, Alabama, January, 1917," reciting a valuable consideration received, and the sale, transfer, assignment, and delivery unto Fox Henderson & Sons of all of the maker's "stock as shown by certificates held" in his name, etc., and which stocks and certificates are sufficiently described, or made the subject thereof by specific reference.

[20, 21] The several instruments defining the nature, extent, and conditions of the partnership and of the trusteeship in undivided interests in the properties carried into the firm or business of Fox Henderson & Sons, are to be construed together. And when so considered (notwithstanding the inapt use of words by the settlor, who is shown by every instrument to be unskilled in the use of legal or technical words or phrases), there is the manifest intention of the grantor and settlor that Mr. Jake Henderson's interest in the properties in question was by way of the trusteeship, and that the trustees named, or the survivors thereof, were provided to hold for him such interest in said properties during his natural life. This was the grantor's and settlor's intention as to that interest in the original properties conveyed to the partnership, and in the interest in the one-sixth interest set apart for himself. This is the necessary construction of grantor's and settlor's acts and words as to his intent and purpose in the creation of the intermingled conditions of the partnership and the trust interest therein, the necessity for its due administration, and the purpose to meet and remedy the situation described by the grantor; that is to say, it was the intention of Mr. Fox Henderson that, in whatever way Mr. Jake Henderson and other cestuis que trustent took or had an interest in the undivided partnership and trust properties, it should be only through and as invested in the trustees therein named or their survivors. Otherwise, the commingled partnership and trust properties could not be duly managed, conducted, or conveyed without the consent and conveyance of cestuis que trustent. Such result would defeat the purpose of Mr. Henderson. Effective delivery of the several instruments is shown by the uncontroverted testimony contained in the record.

[22] The partnership agreement and trust deeds, being executed as required by law of conveyances, are effective, as respects the properties conveyed and made the subject of the respective trusts, to declare and define the interests, rights, and duties of the partners of the firm and of the trustees and cestuis que trustent. The same became effective and binding upon due execution and delivery. Crawford v. Carlisle, 206 Ala. 379, 387, 389, 89 South. 565. There is no conflict between the partnership relation and the active trusts set up in the same written instruments, and it is not contrary to the provisions of law to declare the several relations in the same instruments.

[23] The trust set up in an undivided interest in the partnership and its properties, like that declared in the will, was an active trust. Its duration and objects are specifically declared, or described, in the several instruments adverted to, save in that transferring to the partnership the settlor's entire interest in stocks in "all banks, firms, or corporations" in which he was a shareholder. Likewise the trust declared for Mr. Jake Henderson by the deed of trust was "for * * * his natural life," and "at his death" required the fund or property made the subject thereof "to go to the same trustees or so many of them as may still live for the benefit of little Dorothy Henderson," the only child of

Mr. Jake Henderson, *"and if any other children born of his* (Jake's)" it is provided that they "be treated to share equally with Dorothy by the same trustees." (Italics supplied.) This intention as to the remainder is further emphasized, or the nature thereof indicated, by the settlor's reserving the disposition of the income from the trust fund, saying:

"As to the amount to be paid to * * * Jake, and also to his child, Dorothy, *or his children, if any others, by the trustees, I will mention later on after considering everthing fully."* (Italics supplied.)

He never made provision "later on" in the trust deed for any estate to be delivered, or interest or "amount to be paid" to or for the other children of Mr. Jake Henderson, and the only provision made for them was in property they could "share equally." Thus unequivocally was the trust set up for the "other children" in remainder with Dorothy, and no annuity, maintenance, or "amounts to be paid" during the life estate of the father were to be paid by the trustees for or to the "other children." Their interest was restricted to a remainder in the corpus of the trust with Dorothy, after the death of the father. This intention to create a vested remainder in Dorothy, and her brothers and sisters, if such there be, to the corpus of the trust, is not overcome by the many subsequent provisions for Dorothy, by way of her maintenance, education, a home, and support "until she arrives at the [age] of maturity and then marry." Such provisions in life for Dorothy are sufficient, however, to deny the intent of the settlor to like provisions for "other children" that may be born of Jake Henderson's, yet they do not exclude from her a joint interest in remainder to the corpus with Jake's other children. Specific provision for Dorothy alone, out of the net income of the trust fund, are:

"I want her always cared for in every way out of my money * * * until she arrives at the [age] of maturity and then marry —— home and ask my boys as my heirs to see at all times that she never suffers for anything, * * *" and "at his death (Jake's)" the trust to be turned over to the same trustees "for the sole benefit of his little daughter, Dorothy Henderson," and "I want her to be well educated in every way and well cared for, and all expenses of hers to be paid by the trustees out of the amount left them for Jake Henderson."

The grantor and settlor was not familiar with the use of words in a testamentary instrument, as "absolutely and forever," or in a trust deed, as in "fee simple after his death." Though the use of such words may be confusing, the intent and meaning, in the context providing a life estate and a vested remainder in the first trust deed, is: (1) The beneficiaries during the life estate are Mr. Jake Henderson, Mrs. Mary (Vining) Henderson, and Dorothy Henderson; (2) and those who were invested with the corpus in remainder are Dorothy Henderson and "such other children born of his (Jake's)." This remainder, if such "other children" are born, would be held as tenants in common of an "undivided" interest by Dorothy and such brother or sister. Mr. Henderson refers in the trust deed to such "undivided" interest, though he describes the ownership of that remainder, after the expiration of Mr. Jake Henderson's "natural life," as being in "Dorothy Henderson," "who is to own Jake's entire interest in all property of his in fee simple after his death." The deed using this descriptive clause was dated after the trust was declared, and, while it did not change the legal effect of the trust, is an aid in interpreting ambiguous expressions in the other instruments creating (1) the life estate in net income for the cestuis que trustent indicated; and (2) a vested remainder in Dorothy, subject to be diminished by the happening of the contingency provided for—the birth of "other children born of his (Jake's)." And only in the grantor's disposition of the remainder, after the life estate, did he provide for such "other children." His provisions for Dorothy—out of the net income from the trust—for maintenance, education, and her support "until she marry," the "care for [her] in every way," which he required of the trustees, his expressed preference that she live "with our people at Troy, Ala., [provided] it meets with her mother's approval in every way," could and did only mean to Mr. Fox Henderson, in the preparation of the trust deed, "little Dorothy Henderson." And this provision, for Dorothy, of a home, education, and maintenance "until she marry," will not be made the ground for the destruction of the entire trust for the several objects of settlor's anxious solicitation, care, and protection. It must be conceded that, if the provision in the trust deed ("until she marry") be by implication (and contrary to the strong words used by the settlor) extended to the support of "other children" of Jake's until they each "marry," the rule against perpetuities was offended. Mr. Henderson did not say or do this, and did not intend to say or do this. If there is ambiguity or conflict in this provision for maintenance, education, or support of Dorothy, the grantor and settlor has been his own interpreter when he fulfilled the *conditions of the partnership* and trust by a conveyance of his real properties to the partnership, and saying further, of the trusteeship, that it was "to follow his little daughter's interest Dorothy Henderson (undivided)."

Notwithstanding this pronouncement of Mr. Henderson, we believe, and so hold, that "other children" born of Jake in lawful wed-

lock share with Dorothy the "undivided" remainder of the trust estate, and that they do not share with Dorothy, or have any interest, benefit, support, or maintenance allowed in any portion of the net income from the trust estate. At the outset the grantor and settlor announced that "after considering everything fully" he would indicate or "mention later" the amounts to be paid (by the trustees) to his "boy Jake" and also "to his (Jake's) child Dorothy, or his children, if any others." Failing to make provision for payment from the net income to or for other than Jake; Mary, and Dorothy, the trustees are not authorized to make payment therefrom of any sum for or to other children of Mr. Jake Henderson. It was "little Dorothy" only, of such grandchildren, who is made the object of the tender care and solicitation of the grandfather and settlor, guarding against her every need to the time of her marriage, and providing for her, after her father's death, by the vested remainder declared. It was Jake's little Dorothy, by Mary Vining, that the grandfather provided for out of the net income from the trust estate, and he did not leave her maintenance, education, care, and support to her mother or father, but set himself up, by way of the trust, in loco parentis. It was the "other children," if any, born of his son Jake, that the grandfather only provided for with Dorothy in remainder to the corpus after the life estate had fallen in.

The trustees are at all times required to support the equitable titles, discharge the active duties of the trusts and when the object's of their existence are accomplished, and the trusts are executed, the law handed over the remainder in possession and enjoyment to Dorothy and to her brothers and sisters, if any, by her father. Coker v. Hughes, 205 Ala. 344, 346, 87 South. 321. Provisions in the trust deed of January 1, 1917, for Mrs. Mary (Vining) Henderson, are:

"As long as Mary, * * * Jake's wife, remains single and unmarried, I want her cared for as we now do it. * * *"

And in that of January 3, 1917:

"I also want his wife, Mary, to have here in Troy, Ala., a comfortable home to live in and to be cared for. * * * All the expense and cost of every kind of taking care of Mary is to be charged up to Jake Henderson by the trustees as against him."

The fact that exception is made in the conveyance of January 22, 1917, of the place "known as the Jake Henderson home and lot," evidenced the intent that she (Jake's wife) should have that home during life, or until she remarried, in addition to the support indicated—"as we now do it"—required for her of the trustees out of the net income from the trust fund.

[24, 25] The several provisions for, and instructions to, the trustees, as to the amount of the allowance to Mr. Jake Henderson during his life, in the sums indicated, were merely advisory as to the amounts to be paid him by the trustees from the net income from the trust fund, and in the exercise of their discretion, having regard for the amount of that income and conduct "at all time" of the cestui que trust. And in doing this a like regard must be had for the provisions for the allowances from that net income to Mrs. Mary (Vining) Henderson and Dorothy Henderson. Therefore the trustees have the discretion to advance Mr. Jake Henderson monthly amounts in excess of $250. So, also, grantor's statement of the amounts, and the provision for a home, for Dorothy Henderson—in caring for, maintaining and educating her—to "pay it out of money in the hands of the trustees for Jake Henderson to the amount of paying her bills, $75 or $80 per month, if necessary," was merely advisory. Such statement of amounts was not intended to limit the trustees to such amounts, but were merely suggestive, and the allowances out of the trust fund for Dorothy may exceed the monthly sums named. The further requirement is that such expenditures for Dorothy shall be made out of the net income from the trust fund in the hands of the trustees for Mr. Jake Henderson. The interlineations in pages 3 and 6 of the original trust and partnership agreement (of date January 3, 1917) transmitted to this court show that Mr. Fox Henderson did not intend that the general estate should carry the expense of maintenance, education, etc., of Dorothy. He interlines, in the provision that "the trustees to pay out for her such amounts as in their judgment seems correct and proper * * * all expenses of hers to be paid by the trustees," and words "out of the amount left them for Jake Henderson."

[26] When the several instruments creating the trust are considered, the intention of the grantor, in setting up the same, was not an attempt to alienate his properties, real or personal, beyond the period allowed by the statute (Code 1907, § 3417), or to violate the rule of the common law against perpetuities. Mr. Henderson had a right to provide, as he did, for his daughter-in-law, Mrs. Mary (Vining) Henderson, for life or until her remarriage, because she was in being at the date of the execution and delivery of the respective trust deeds providing for her. For like reason, Mr. Henderson had the right to provide, as he did for his son, Mr. Jake Henderson, for life, and for his grandchild, Dorothy, during the life of her father, and in remainder in the corpus of his estate or properties set apart for the trust fund. Mr. Henderson also had the right to provide, as he did, for such other child or children of Mr. Jake Henderson, in remainder in said corpus, as he provided for Dorothy in remainder.

The provision of the class of such grandchildren in remainder was fulfilled in the fact that Dorothy was in life when the trust was created. This class represented by her (Crawford v. Carlisle, 206 Ala. 379, 89 South. 565; Duncan v. De Yampert, 182 Ala. 528, 62 South. 673), was subject to open up, within the rule against perpetuities, and let in the other grandchildren indicated to share the remainder with Dorothy and within the life of Mr. Jake Henderson, or the period of gestation after his death. There was no possibility of this being done at a later time. Thus the grantor in the trust had the right under the common law and under the statute (section 3417) to provide for his son for life, and grandchild (Dorothy) for life, or until she marry, and, on the son's death, for the grandchildren named and indicated (Jake's children), as was done. Every act of the grantor, in declaring and setting up the said trusts, is within the rules prescribed by law and applicable to the several classes of his properties. That the objects of the trust, Mr. Jake Henderson and his children, born or unborn, may die many years before the death of Mrs. Mary (Vining) Henderson, does not affect or offend the provisions of the statute or the rule of the common law as to trusts. Through the provision for the children of Mr. Jake Henderson, the nature or character of any provision of the trust is not rendered uncertain, nor contingency imposed, offensive to the statute (section 3417), or the rule against perpetuities under the common law, since it is a physical impossibility for him to have children that are born at a later date than the statute or the rule against perpetuities permit. Every contingency to which those entitled to take under the trust set up is such that the trust may not be prolonged beyond the respective periods permitted.

[27] It should be said, of the respective interests under the trust for life or for the limited periods indicated—for Mr. Jake Henderson, Mrs. Mary (Vining) Henderson, and Dorothy Henderson—that the limited interests for such cestuis que trustent are only in the net income from the trust fund or properties. As the beneficiary interest of the nature indicated, "for life," in the net income of the trust fund, is subject to the provisions for Mrs. Mary (Vining) Henderson and for Dorothy Henderson until she marries, such net income may be paid by the trustees to Mr. Jake Henderson, or used by them as they think best for him, having regard for the amount of the trust fund (and other cestuis que trustent having an interest therein), or in the payment of obligations incurred by Mr. Jake Henderson, or in payment of his grantees; that is to say, this may be done by the trustees so long as the net income from the trust fund is so used, after having first discharged the provisions of the trust for Mrs. Mary (Vining) Henderson and Dorothy Henderson. Such payments of net income may not extend to any part of the corpus of said trust estate, which is required to be unimpaired and retained for the remainder in trust provided for Dorothy, and any other child or children of Mr. Jake Henderson. Rugely & Harrison v. Robinson, 10 Ala. 702, 731; Robertson & Pettibone v. Johnston, 36 Ala. 197; Smith v. Moore, 37 Ala. 327; Taylor v. Harwell, 65 Ala. 1; Jones v. Reese, 65 Ala. 134.

[28] It follows that payments made by the trustees to Mr. Jake Henderson of amounts more than the sums "suggested" in the partnership agreement, and the respective obligations incurred by way of alimony to Mrs. Mary (Vining) Henderson, and specifically indicated in the "alimony agreement," in so far as the same do not consume any part of the corpus of the trust estate, but only the net income thereof, are proper payments, and are chargeable to Mr. Jake Henderson's share in the net income. Under the contract or agreement for alimony entered into by Mr. Jake Henderson, the trustees and Mrs. Mary (Vining) Henderson, in lieu of her right to a part of the net income from the trust set up (if not interfering with Dorothy's support until she marries), the payments of the sums obligated to be made are binding to the amounts indicated. The respective parties having the right of contract are bound by the agreement for alimony, in lieu of the provisions made in the trust deed for Mrs. Mary Vining Henderson.

[29] The trustees are invested with full power—to conduct the affairs of the trusteeship as they may deem best, to sell and convey, and invest and reinvest the proceeds—and to such ends they are authorized to join with other partners of the firm of Fox Henderson & Sons in the conduct of the affairs of any of the joint properties, and in the making of sales of any part thereof, and, by proper conveyance thereof, to vest the title in the purchaser, grantee, transferee, or assignee, freed from the trust and remainder interests created in the trust deed and partnership agreement. This power extends to the doing of all things necessary in the due conduct of the various businesses embraced in the partnership and trusteeship. There is, therefore, no necessity to require the assent, concurrence, or signature to such conveyance, transfer, assignment, or release, of Dorothy, Mrs. Mary (Vining), or Mr. Jake Henderson, or of "other children" of Mr. Jake Henderson. The trust estate is represented and discharged to the extent of such interest in its due conveyance, assignment, or transfer by the individual owners and the trustees joining, whether the same be of properties conveyed to the partnership or that not carried therein and subject to the trust provisions of the will.

[30] We have heretofore indicated that the undivided trust properties and the administration of the partnership are so intermingled that it was Mr. Henderson's intention, in the constitution of the partnership and trusteeship, that the same were, respectively, to extend beyond and after his death, for such time as the parties in interest might treat the partnership as continuing (30 Cyc. 636, 637; Steiner & Lobman v. Steiner Land & Lbr. Co., 120 Ala. 128, 26 South. 496), and until the purposes of the trusteeship were accomplished. It is shown that the individual members of the partnership and the trustees did treat the partnership as continuing after Mr. Henderson's death. Such action or conduct in the administration of the partnership and trusteeship by all of the members thereof was the continuation of the partnership and the trust relations therein, as the respective individuals and trustees having the legal title thereto were authorized to do under the law, and as Mr. Henderson intended, and had a right, to provide.

Mr. Henderson also had the right to reserve to himself a beneficial power in the trust. Code, § 3427. That power was irrevocable under the terms of the instruments creating the same (section 3436), and may be executed by the survivors (Code, § 3438; Gindrat v. Montgomery Gaslight Co., 82 Ala. 596, 602, 2 South. 327, 60 Am. Rep. 769). The fact that in the same instruments the partnership and trust relations were created and declared presents no legal difficulty to the full understanding of the respective scope and nature of the two relations intermingled by the grantor and settlor, or to a due conduct of the business of the partnership, and of the administration of the active trust or trusts so set up, declared, and evidenced thereby.

It follows that the instructions given to complainants and trustees by the decree of the lower court, that "as trustees for Jake Henderson, for his life, and after his death for his children, have the power to sell the undivided interests of the said Jake and his children in lands belonging to the partnership of Fox Henderson & Sons, either conveyed to said partnership by the said Fox Henderson, or subsequently acquired," are in accordance with the view we have announced. So of the other joint properties desired to be sold. However, the further instruction, contained in paragraph A of the decree, to the effect that "they have no right to convey the interest of the said Jake Henderson in any real estate belonging to the said Fox Henderson at the time of his death, separate and apart from said partnership of Fox Henderson & Sons," is in error. The same right of conveyance by the trustees extends to each of the foregoing classes of property, as we have indicated. So, also, the instruction that the trustees "have the power to join with the other members of said partnership in purchasing for said partnership other lands and, as occasion may offer, sell the same. They may keep the said beneficiaries in said partnership, and need not separate or segregate the same, and may for said beneficiaries continue their interest in said partnership, as they may be advised is to the best interest of the estate so held in trust," is in accordance with the views we have announced. So of the purchase and sale of other properties. The further instruction in the decree that as he owns an undivided interest in said partnership and all its effects, Mr. Jake Henderson took a personal interest therein, in such wise that any conveyance of the property of said partnership "should be signed by Jake Henderson also to pass good title," was in error. A proper conveyance duly executed and delivered by the respective individual owners, Sallie E. Henderson, Gussie H. Jones, Fox Henderson, Jr., Fred W. Henderson, and by the same parties as the trustees for the cestuis que trustent, will convey the legal title, or other beneficial interest therein, held by the individuals and as trustees.

[31-33] The fact that no appeal was taken from the decree of the circuit court in equity as to the "charitable trust" sought to be set up by Mr. Henderson, does not prevent this court from a construction of the trust deed to ascertain and declare the settlor's or grantor's intent as given expression in the whole instrument. That difficulty may attend the ascertainment of some of the beneficiaries after the death of Mr. Fox Henderson does not affect the charitable trust, if effectively created by the trust deed. 2 Perry on Trusts (5th Ed.) § 732. Generally speaking, charitable trusts are not prohibited by the statute (Code 1907, § 3417), or by the common law against perpetuities (Crawford v. Carlisle, 206 Ala. 379, 387, 89 South. 565; Christ's Hospital v. Grainger, 1 Mac. & Gord. 460, also cited in 19 L. J. Ch. 33, 1 H. & Tw. 553; Gray's Rule Against Perpetuities [2d Ed.] § 589 et seq.; Marsden's Perpetuities & Accumulation, pp. 24, 295, 307; 2 Perry on Trusts [5th Ed.] § 734; Harvard Law Journal [Warren] 1921, p. 645).

[34] In determining whether an instrument be a deed or a will, the controlling question is:

"Did the maker intend any estate or interest whatever to vest before his death, and before the execution of the paper? Or, * * * did he intend that all the interest and estate should take effect only after his death? If the former, it is a deed; if the latter, a will; and it is immaterial whether he calls it a will or a deed, the instrument will have operation according to its legal effect." Abney v. Moore, 106 Ala. 131, 18 South. 60; Daniel v. Hill, 52 Ala. 430; Kyle v. Perdue, 87 Ala. 423, 6 South. 273; Crocker v. Smith, 94 Ala. 295, 10 South.

258, 16 L. R. A. 576; Gomez v. Higgins, 130 Ala. 493, 30 South. 417; Jordan v. Jordan, 65 Ala. 301; Rice's Admr. v. Rice, 68 Ala. 216; Trawick v. Davis, 85 Ala. 342, 345, 5 South. 83; Gillham Sisters v. Mustin, 42 Ala. 365.

[35] In the partnership agreement and trust deed of January 1, 1917, are contained the provisions for the charitable trusts sought to be set up. They are in the handwriting of the "settlor" or grantor, with interlineations made by him as follows:

"First, I wish fifteen thousand dollars ($15,-000.00) of the money to my credit in the firm of Fox Henderson & Sons, * * * and to loan said amount at say 6 to 7 per cent. interest on land and the net proceeds to be used each year in paying the pastors of the different churches, or the churches themselves [and to the Sunday schools and orphans' home, etc.] (The matter we have bracketed is interlined.) My usual amount of say one hundred dollars each, and less to some, about the same as I do each year. * * * Certain amounts must be set aside for the several purposes herein and hereafter mentioned, and loaned out by my boys and heirs, all of them on land security at a fair interest, and the interest used only for these several purposes, *the net amount of interest.* * * * Should it be necessary [*in the event of* my death before any of the other partners of the said firm of Fox Henderson & Sons] (italics supplied) to use to the extent *in all* to the amount of thirty thousand dollars at interest in order that the net incomes from same may be sufficient to meet these several requests and others that I may hereafter mention, then I request *specially that my wishes all be carried out* so long as it may be needed. I also request that *many* poor widows and orphans be helped in a reasonable way, *all out of what I may leave in event of my death"* (italics supplied).

The charitable trust thus sought to be set up is ambulatory and testamentary. And such was Mr. Henderson's intent as to the use of a part of the net income of the fund of $15,000 or $30,000 for the charitable objects named. If the terms of the instrument making reference to a fund for charity were ambiguous (and we think not) as to whether the same became effective during Mr. Henderson's life, according to the terms of the instrument seeking to set up the same, it is sufficient to say when in life he did not set aside such a fund, as he did that of the respective interests of his children and that to the trustees. The trust for charity must fail for the lack of its probate as a testamentary instrument. However, this fact cannot affect the expressed intent and general scheme of the other trusts by the settlor or grantor for members of his family, since the provisions for charity are disassociated from the trusts for members of his family; that is to say, the one class of attempted charities is not so commingled or related to the other set up in the trusts for members of the settlor's family as that both

must fail. There is ample authority to support the proposition that where a legal trust is created, or sought to be created, in a will or deed, and the nature of the same is such that it was settlor's intention that they are separate and can be separated without having the effect of making a new will or trust for the testator, and the legal trust can be upheld without doing injustice or defeating what the grantor is presumed to have wished, this will be done. Lyons v. Bradley, 168 Ala. 505, 53 South. 244; Crawford v. Carlisle, 206 Ala. 379, 89 South. 565; Cross v. United States Trust Co., 131 N. Y. 330, 30 N. E. 125, 15 L. R. A. 606, 27 Am. St. Rep. 597; Hascall v. King, 162 N. Y. 134, 56 N. E. 515, 76 Am. St. Rep. 302.

As corrected, affirmed in part, and in part reversed, the cause is remanded to the circuit court, in equity, for other and further directions to the personal representatives and trustees pursuant to the foregoing, as from time to time may be necessary in the administration of the trust estate.

Corrected, affirmed in part, reversed in part, and remanded.

All the Justices concur.